## SCHASER VS. THE STATE.

EVIDENCE IN CRIMINAL ACTIONS. (1) *Proof that defendant was guilty of a different crime from that charged.* (2) *Re-direct examination: new matter.* (3) *Evidence to sustain credit of witness not impeached.*

1. On the trial of a person charged with a crime, it is error to admit, for the purpose of showing that he was probably guilty of the offense charged, evidence of facts tending to show that he was guilty at another time of some other crime.
2. Trial for arson. A witness for the state, on his direct examination, testified that in a conversation with him on a certain occasion, the accused said to him, "I suppose you are going to send me up on that *buggy scrape*." On his cross examination the witness explained that the words "buggy scrape" referred to a buggy which one L. had had

the accused arrested for stealing, a few days before; and that witness had been employed by L. to look it up, and had recovered it. On his re-direct examination, the witness was permitted, against objection, to testify " what he knew and what he did in regard to that buggy scrape," and to detail facts having a strong tendency to show that the accused had stolen the buggy. *Held*, that this was *new matter*, not admissible within the rule for re-direct examination; and its admission was fatal error.

3. Testimony of the same witness (a detective), and others, as to what he had told different persons that defendant had said in conversation with him, before the occurrence of the arson charged, was also improperly admitted, having been offered, apparently, merely to sustain the credit of the witness, which had not been impeached. But perhaps the judgment against the accused would not be reversed merely on this ground.

ERROR to the Circuit Court for *Pierce* County.

The plaintiff in error, by his writ, brought here for review a judgment of the circuit court by which he was convicted of arson. The record being no longer on file in this court, the nature of the errors alleged must be learned from the opinion.

*Glover & Clinton*, for plaintiff in error.

*The Attorney General*, for the state.

COLE, J. We are of the opinion that there must be a new trial in this case, on account of the error of the court below in admitting improper testimony against the objection of the defendant. The most serious and material error, and one which could not fail to prejudice the case of the defendant in the minds of the jury, was in allowing the witness Lewis to state, on his re-direct examination, what he and others did about what is termed in the evidence the " buggy scrape." The defendant was on trial for the crime of arson, and the direct and obvious tendency of the testimony referred to was to prove that he had just previously committed larceny in stealing a buggy belonging to one Levitt. It needs no argument to show that testimony of this character was not relevant and pertinent to the issue, and that it was wholly improper to attempt to es-

tablish the guilt of the defendant in respect to the offense charged, by showing facts which tended to prove that he had probably committed another offense. And the effect of such evidence in poisoning the minds of the jury against the defendant is plain and inevitable.

The attorney general, however, seeks to justify the admission of this testimony on this ground and for this purpose. On the direct examination of Lewis, he says, the "buggy scrape" was referred to only as a part of the conversation had by that witness with the defendant the day before the fire, the details of which were not attempted to be given in the examination in chief. It was a matter first referred to by the defendant himself in this conversation. And the attorney general argues that the defendant's counsel cross examined in relation to that transaction in such a way as to give the prosecution the right to go into the whole matter on the reexamination in the manner they did.

This view, is we think, incorrect, not being sustained by the record. It is true, Lewis testified in substance on his examination in chief, that the defendant came to his shop in the afternoon of the 20th of July, called him out, and said he wanted to talk with him. In the conversation then had, the defendant among other things, said to the witness: "I suppose you are going to send me up on that buggy scrape." Some further remarks in respect to that transaction passed between the defendant and the witness. In his cross examination, the witness explained what he understood, or what was meant, by the "buggy scrape," saying that it referred to a buggy which Levitt had had the defendant arrested for stealing a few days before; that he had been employed by Levitt to look it up, and that he had recovered it. On his redirect examination the witness was permitted to testify, under objection as to its competency, "what he knew, and what he did, in regard to that buggy scrape," and then proceeded to detail many facts and circumstances which tended strongly to

show that the defendant had stolen that buggy. But all this was new matter, which was not gone into on the cross examination, and it was not properly connected with the transaction to which the cross examination referred. That was confined to an explanation of the meaning of the words " buggy scrape " referred to by the defendant in the conversation, and which, as explained by the witness, related to the fact that Levitt had had the defendant arrested a few days before for stealing his buggy. But this cross examination did not attempt to draw forth what the witness knew about that crime, or any statement as to what he did to recover the buggy, together with all the facts and circumstances within his knowledge or found out by him which tended to prove that the defendant had stolen the buggy. This was new matter, not relating to any thing gone into on the cross examination, and which the prosecution had no right to draw forth.

The limits or extent of a reexamination are well settled by the authorities. Prof. Greenleaf says, in his work upon evidence (vol. 1, § 467): "After a witness has been cross examined respecting a former statement made by him, the party who called him has a *right to reexamine* him to the same matter. The counsel has a right, upon such reexamination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross examination, if they be in themselves doubtful; and also of the motive by which the witness was induced to use those expressions; but he has no right to go further, and to introduce matter new in itself, and not suited to the purpose of explaining either the expressions or motives of the witness."

In Powell on Evidence the rule is laid down in the following language: " When the cross examination of the witness is concluded, the party who called him has the right to reexamine him on all matters arising out of the cross examination, for the purpose of reconciling any discrepancies that may exist between the evidence on the examination in chief, and that which has

been given on cross examination ; or for the purpose of remov-
ing or diminishing any suspicion that the cross examination
may have cast on the evidence in chief.    But the reexamining
counsel cannot ask the witness as to *new matter ;* in other
words, the questions that may be asked must be exclusively
such as are connected with, and arise out of the cross exam-
ination ; and no questions can be asked on reexamination
which tend to introduce new evidence that might have been
given on the examination in chief." Vol. 94, Law Library, p.
390.    Starkie and Phillipps state substantially the same rule.
Starkie on Ev., 4th ed., p. 231 ; 2 Phil. on Ev., 394.

Now it is obvious that according to these authorities the
questions asked Lewis on reexamination as to what he knew
and as to what he did with regard to the " buggy scrape " were
not properly connected with any matter gone into on the cross
examination, and therefore should not have been allowed.
The facts elicited by these questions, as we have already said,
were of a nature to prejudice the defendant in the minds of the
jury, tending as they did to prove · that he had committed
another crime.

It is further insisted that the court below erred in admitting
evidence as to what the witness Lewis told different parties the
defendant said in conversations with him, before the occurrence
of the arson charged in the information, and also, in permitting
Lewis to testify as to what he told other parties the defendant
had said.

We are really unable to see upon what ground the admission
of much of this evidence can be justified.    It is said that as it
appeared that Lewis was acting in the capacity of a detective,
it was proper for him to prove that he communicated these con-
versations had with the defendant to his employers, and thus
explain his connection with the matter.    The evidence does
not seem to have been offered for any such purpose, but rather
to sustain the character and credit of the witness, when no
effort had been made to discredit him.    This kind of testimony,

however, was not so injurious and prejudicial to the rights of the defendant as that to which we have above referred, and its admission might not work a reversal of the judgment, were there no other error in the case.

It may be shown by the most irrefragable proof that the defendant is guilty of the offense charged against him; but this does not justify the violation of well settled rules of evidence in order to secure his conviction. The suggestions above made are believed sufficient to show that material error was committed on the trial.

*By the Court.* —The judgment of the circuit court is reversed, and a *venire de novo* awarded.