TRAVERSE vs. THE STATE.

*September 9 — September 23, 1884.*

*Criminal evidence: Motive for homicide: Subsequent adultery.*

1. On a trial for murder, evidence of an act of adultery by the accused with the widow of the deceased, four or five days after the killing, was not admissible as tending either to show that the motive for the killing was not self-defense as claimed by the accused, or to rebut any presumption of innocence arising from the circumstances under which the killing was done.
2. A single act of adultery does not of itself tend to prove a prior act of adultery.

ERROR to the Circuit Court for *St. Croix* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is a prosecution for the murder of George Miles, in March, 1882, at Hudson, Wisconsin. There is evidence tending to show that, a year or so prior to the alleged murder, the deceased, George Miles, and his wife, Mary, separated,

and did not afterwards live together as man and wife; that the plaintiff in error, *Tobias Traverse*, boarded with Mary; that George went north after leaving his wife, but returned to Hudson in the winter of 1882; that he was jealous, or at least suspicious that there were improper relations existing between his wife and *Traverse;* that he threatened to shoot the latter; that on the evening of March 17, 1882, he, with a revolver in his pocket, went to Mary's house, where *Traverse* then was, and tried to get in through the door, which was closed against him; that while there at the door, trying to get in, *Traverse*, from the inside, shot towards him through a panel of the door with his revolver, the ball hitting him upon the head, causing a wound from which he died March 28, 1882.

"The prosecution was originally against *Traverse* and Mary jointly. On the first trial Mary was acquitted, and the jury disagreed as to *Traverse*. The defense sought to be made out was justifiable homicide. On the last trial *Traverse* was, under the charge of the court, convicted of manslaughter in the second degree. The defendant moved for a new trial on several grounds; among others, for the improper admission of evidence, and improper directions to the jury. The court overruled the motion and rendered judgment against the defendant, and sentenced him to the state prison; to each and all of which the defendant seasonably excepted. To reverse that judgment the defendant sued out a writ of error."

For the plaintiff in error there was a brief by *R. H. Start* and *L. P. Wetherby*, and oral argument by *Mr. Start.*

*H. W. Chynoweth*, Assistant Attorney General, for the defendant in error.

CASSODAY, J. We have carefully considered each of the numerous errors assigned, but deem it only essential here to present our views as to one. The sheriff was allowed, on

behalf of the prosecution, to give evidence tending to show that *four or five days after* the shooting he went to Mary's house to arrest her and *Traverse*, about eleven or twelve o'clock at night, and that he found them under circumstances indicating that they were then occupying the same bed. This seems to be the only testimony tending to prove adultery. On this point the court charged the jury as follows: "The prosecution claim that the defendant was living with Mrs. Miles in a state of adultery. This fact, if true, would not deprive the defendant of the right of self-protection. He would still be a boarder, and as such entitled to protection. Adultery is, of course, a crime, and defendant, if he was guilty, as claimed, was guilty of a great wrong towards Miles; but this fact would not be sufficient to license Miles in violently invading his wife's home to do him injury. The testimony tending to show *adultery was admitted only as tending to show a motive for crime, and to rebut the presumption of innocence arising from any apparent want of motive*, and as such you *should consider it*. It may be deemed *material* in determining whether the defendant fired the shot in question as an honest and justifiable act of self-defense, or *for some other and less justifiable motive.*" Thus the charge made the act of adultery, four or five days after the shooting, material evidence as tending to prove that the motive for the shooting was not self-defense, but the permanent removal of George Miles, and also material evidence as tending to rebut the presumption of innocence arising from the mere circumstances under which the shot was fired. We are unable to perceive the relevancy of the evidence upon either proposition. It will be observed that it was not evidence tending to prove adultery prior to the shooting; nor was it given in connection with any such evidence. Had it been, a different question would have been presented.

Adulterous intercourse existing at one time may be presumed to continue while the parties remain under the same

roof and with no change of circumstances; but a single act of adultery does not of itself tend to prove a prior act of adultery. *Lawson v. State*, 20 Ala. 75; *Bonsall v. State*, 35 Ind. 460. No more would proof of a single act of adultery, four or five days after the shooting, tend to rebut any presumption of innocence arising from the circumstances under which the shot was fired. Yet that seems to be the effect of the charge to the jury. In fact, the charge went still further, and authorized the jury to find from such subsequent act of adultery not only that all presumption of innocence arising from the circumstance under which the shot was fired had been removed, but that at and prior to the time of the shooting, the accused had been living in adulterous intercourse with Mrs. Miles, and that he deliberately shot her husband, under the false pretense of self-defense, in order that he might continue unmolested such intercourse. Of course, if the accused was guilty of adultery, that was a separate and independent crime by itself, for which he might be tried and convicted; but evidence of such crime would be irrelevant on the trial of the accused for shooting the deceased with intent to murder him, unless the relations of the parties, the time of the alleged adultery, and the circumstances were such as to furnish the accused, at the time of the shooting, with a motive to destroy the life of the deceased. Certainly the alleged adultery here sought to be established, standing by itself, had no logical bearing upon any fact involved in the issue upon which the accused was being tried. Such adultery would have been just as liable to occur if the accused was innocent of the crime for which he was tried as though he were guilty. So his guilt or innocence of the crime for which he was tried cannot be made to depend upon the presence or absence of adultery four or five days after the alleged murder. A fact, to be evidence, must tend to make *evident*, clear, manifest — to prove. The fact here proved did not. Ordinarily, evidence of a sepa-

rate and independent crime cannot be given in evidence on the trial of another crime, even when committed before. *Schaser v. State*, 36 Wis. 429. We do not say that it might not in a case like this. That question is not before us, and, of course, not decided.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of St. Croix county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.