MARY MOORE, administratrix, *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk. June 2, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Loss of Life — Railroad — Due Care.*

A woman, who was sent by her employer on an errand to a railroad station after dark, was killed by being struck by the locomotive engine of an express train. In entering upon the railroad from the highway, she was obliged to pass through an opening in a high board fence and to cross several tracks in order to reach the station. She was in the possession of her faculties, and had been to the

station before, but always in the daytime. Just before she was struck, the engineer saw her erect and facing the locomotive, between the rails of the track on which it was approaching her, which was the first of the tracks over which her course to the station led. The head-light on the engine was burning brightly and the bell was ringing. It was cold and frosty, and a cloud of smoke and steam from another train hung over the track near the station. *Held,* in an action against the railroad corporation for causing her death, that there was no evidence to justify a finding that she was in the exercise of due care.

TORT, by the administratrix of the estate of Maria Burke, for causing her death. Trial in the Superior Court, before *Sherman,* J., who reported the case for the determination of this court, in substance as follows.

The plaintiff's intestate was struck by an engine attached to an express train upon the defendant's railroad, on December 24, 1887, near the Riverside station, in Newton.

The person employing the intestate as a domestic testified that she had been employed by her for six or eight months prior to the accident; that the intestate was about twenty-two years of age, and an exceptionally bright Irish girl; that on the night in question the intestate was sent to the station from the house, which was on the north side of the railroad track and about five to seven minutes' walk from the station, at about twenty minutes past six o'clock, to carry two bundles to two ladies employed at the station, and to bring back a basket of provisions which was to be sent from Boston by train. On cross-examination the witness testified that the intestate was as fully possessed of the faculties of sight and hearing as ordinary people are; that she had been sent to the station before, but never in the night-time; and that the packages she carried were done up in yellow paper.

The plaintiff produced a plan of the station and surroundings, by which it appeared that the defendant's railroad was fenced across Charles Street; that there was an opening in the fence and a platform about eight feet and a half wide running across the tracks to the station platform in front of that opening; that the distance from the fence to the northerly rail of the northerly track was eighteen feet, the distance from the northerly end of the platform to the northerly rail was thirteen feet, and the distance from the station platform to the northerly rail was about thirty-two feet; that there was a step up to the platform inside

the opening; that a person on Charles Street could not see the track when approaching the fence, except directly through the opening, which was eight feet and six inches wide; and that the fence was practically a tight board fence about six and a half feet in height, preventing a person from seeing in both directions along the line.

It was admitted that there was no way by which the intestate could have reached the station except by crossing the tracks.

William G. Bosworth, a police officer of Newton, testified that he had visited Riverside station at least daily for twelve years; and that one must go about eight feet from the fence before he could see clearly, or to the curve in the track, which was about three hundred feet to the east, and the telegraph poles on the left obstructed the view beyond them.

Albert E. Barnes testified that on the night of December 24, 1887, he was in the employ of the defendant as an engineer, and ran the engine which was attached to the express train which left Boston at six o'clock; that the train was due at Riverside at nineteen minutes past six; that the train was a few minutes late, and probably reached Riverside about twenty-five minutes past six; and that the signals were all right, and, when rounding up at Riverside station, there was a train there for Newton Lower Falls. He further testified as follows: " While rounding the station at Riverside, the first thing I saw was a lady's dress up about that far (indicating about the knee) on the track that I was on; that was as far as I could see anything up from the ground; the rest was obscured by steam or smoke, or whatever you might call it; you could not see anything except about that high. We were running at a rapid rate, and I shut the steam off with one hand and grabbed the whistle rope with the other, but before I could make a noise with the whistle the lady was struck by the engine. The night was cold and frosty; I could not remember whether there was a moon or not; I could not see the station at Riverside until I got up to it on account of the smoke and steam from the train going to Newton Lower Falls. I saw the woman the instant I struck her; she went up into the air, the pilot running like that [illustrating] slid her right up, and of course, going at the speed we were going, I was by instantly, and I could not tell whether she went back under the train or on the side of

the train. When she rose in the air from the blow of the pilot, I saw her face; when I got so that I could see the whole of her, I saw her facing the engine then; previous to that I could not tell you. At that time we were running on to forty miles an hour, I think; an engine and tender are from sixty to seventy feet long, from the back end of the tender to the extreme end of the pilot."

On cross-examination, he testified that he had run an engine on the defendant's road for nineteen years and eleven months; that the two northerly tracks were express tracks, number one (the most northerly) the outward track, and number two, the inward track; that the other tracks were for the local or circuit trains to run on; that engineers of trains at that time did not whistle at the crossings or stations in Newton, but rang the bell; that he was ringing the bell that night when he struck the woman; that the head-light was burning brightly, and had been all the way out; that he could not tell how far to the west of the crosswalk the intestate was when he first saw her, but it seemed to him as though she was a little bit west of the crosswalk; that he could not say positively that she was walking toward him on the track; that he noticed that she had bundles when the engine struck her, and they looked like yellow wrapping paper; that it looked to him, approaching her rapidly through the fog and steam, that she was apparently walking toward the train, but he could not say positively that she took a step; that he did not see that she had the yellow bundles before he reached for the throttle, for then all he saw was "about that much of her face" (indicating); and that he made a report of the accident, as was usual.

The witness further testified that by the time the steam would work up from the engine and rise to the height of a person it would be three or four minutes; that the walking was slippery, and when he got near enough to see the woman she appeared to be looking a little down, from what little he did see of her just from a passing view; that he was running his train in the ordinary way, and omitted no precautions he could use after he saw the woman; that he was running fast enough extra over the time card to make up the time between Boston and Framingham; and that he was late, and that was the usual thing to do.

On re-direct examination the witness testified that from the time he saw the bottom of her dress until she was struck it was only the fraction of a second; that he could not see her feet, or tell whether they were in motion or standing still; that he was going from fifty-six to fifty-eight feet per second; and that he could not swear to any definite location where the woman was struck.

At the request of the defendant, the judge ruled that there was no evidence to go to the jury; and directed them to return a verdict for the defendant.

If the ruling was right, the verdict was to stand; otherwise, a new trial was to be ordered.

*E. M. Johnson & J. C. M. Bayley*, for the plaintiff.

*Samuel Hoar*, for the defendant.

BARKER, J.  It is unnecessary to consider the other questions raised, because we are of opinion that there was no evidence to justify a finding that the plaintiff's intestate was herself in the exercise of due care.  The crossing was not one to which the provisions of the Pub. Sts. c. 112, § 213, apply, and it is conceded by the plaintiff that the burden of proving that her intestate was in the exercise of due care rested upon the plaintiff. Assuming in her favor, without so deciding, that the jury might properly have found that the plaintiff's intestate was upon the crosswalk when struck by the engine, there is no evidence as to her acts or thoughts from the time when she left the house where she was employed until the instant before she was struck.  She was then seen by the engineer erect and facing the locomotive, and between the rails of the track on which it was approaching her, which was the first of the tracks over which her course to the station led.  Her errand to the station required her, as she knew, to enter upon the railroad through the opening in the fence, and to cross several tracks upon which trains might pass at any time. But she could select her own time to cross, and due care required of her that she should use her faculties of perception and reasonable thought and judgment in selecting an opportunity to cross in safety.  There is no direct evidence that she did any of these things, nor can it fairly be inferred.  The inference that she walked carelessly into danger which reasonable care would have enabled her to avoid is at least as natural and proper from all

the known circumstances as that she was careful. To say that she was careful would, at the best, be a conjecture, and conjecture is not to be allowed to supply the place of proof. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137, 143. *Hinckley* v. *Cape Cod Railroad*, 120 Mass. 257, 262.

*Judgment on the verdict.*