ANNIE E. McLANE, Administratrix,

*vs.*

FRANK G. PERKINS, and others.

Penobscot.    Opinion August 10, 1898.

*Negligence.    Burden of Proof.    Presumption of Fact and Law.    Contributory Negligence.*

In this state, it is a long and firmly established rule that in all prosecutions for injuries alleged to have been caused by the negligence of the defendant, the burden is upon the plaintiff to establish by evidence, as an affirmative proposition of fact, that at the time of the injury or accident the person injured was free from contributory negligence.

This rule obtains in all suits or prosecutions based on allegations of negligence.

There is no presumption of fact or law that any person injured was so careful or acted so prudently in the emergency as to be free from contributory negligence. Such a proposition must be established by evidence.

While freedom from contributory negligence can sometimes be inferred from the circumstances shown, the inference must be from circumstances shown by the evidence to have actually existed and cannot be made from circumstances merely conjectured or even probable.

Where, as in this case, the evidence fails to show the circumstances attending the injury,— fails to show how the injury occurred, and fails to show that the person injured was merely passive in his proper place in the care of the defendant,— it does not sustain the essential proposition that at the time he was free from contributory negligence.

In this case the course of events after the boat (in which was the plaintiff's intestate as employee) left the shore is utterly unknown and can only be conjectured; but conjecture is never sufficient to sustain a proposition of law or fact.

ON EXCEPTIONS BY PLAINTIFF.

This was an action on the case to recover damages for the loss of life of the plaintiff's intestate claimed to have been caused by the negligence of the defendants.

The case comes before the court on exceptions taken at the trial of the cause to the ruling of the presiding justice who, on the motion of the defendant's counsel, granted a nonsuit — the grounds being that after the plaintiff had put in all of her testimony she had failed to make out a prima facie case, and that she had not shown that her intestate was at the time of his death, in the exercise of due and ordinary care.

The facts are sufficiently stated in the opinion.

*P. H. Gillin and E. C. Donworth*, for plaintiff.

It would seem that the court of Maine puts (and it is often quoted as so ruling) the burden upon the plaintiff; but an examination of the different cases shows that in all of them the plaintiff in making out his case showed contributory negligence himself; and of course when this was clear he could not recover.

The plaintiff does not claim that she has made out a clear prima facie case against these defendants until she has proved that her intestate was in the exercise of due care.

But we contend that the plaintiff need not prove affirmatively that her intestate was in the exercise of due care. And for this reason we have cited the cases against railroads to show the distinction we claim. That is, where it appears or must be assumed or there is a presumption that the plaintiff was not exercising due care he must show that he was not negligent by actual facts; but where there is no grounds for the contention that the plaintiff was negligent, then his due care is to be inferred from the circumstances in the case. *Guthrie* v. *Me. Cent. R. R.*, 81 Maine, 572; *McGuire* v. *Railroad*, 146 Mass. 379.

On principle it is enough for the plaintiff's recovery for him to show a negligent injury by the defendant with nothing in the circumstances to show that he was not in the exercise of ordinary care. This done the duty is upon the defendant to show the plain-

tiff's contributory negligence affirmatively.   *Cassidy* v. *Angell*, 12
R. I. 447; *Dallas R. R.* v. *Spicker*, 61 Tex. 427, (48 Am. Rep.
297); *Prideaux* v. *Mineral Point*, 43 Wis. 513, (28 Am. Rep.
558); *Buesching* v. *Gas Co.*, 73 Mo. 219, (39 Am. Rep. 503);
*Furnace Co.* v. *Albend*, 107 Ill. 44, (47 Am. Rep. 425); Wharton
on Negligence, 423, 425, 426; *Louisville, etc., R. R. Co.* v. *Goetz's
Admx.*, 79 Ky. 442; (42 Am. Rep. 227); *Chicago R. R.* v. *Cary*,
115, Ill. 115; *Phila. R. R.* v. *Stabbing*, 62 Md. 504.

Where it is possible to infer due care on the part of the plaintiff
the case should go to the jury, so that the question may be deter-
mined from the facts.   *Greany* v. *Railroad*, 101 N. Y. 419.

Contributory negligence is a defense and the burden of showing
it is upon the defendant after the plaintiff has made out a clear
prima facie case.   *Railroad* v. *Gladmor*, 15 Wall. (U. S.) 401;
*Hill* v. *New Haven*, 37 Vt. 501.

It cannot be contended that in this state the burden of showing
absence of contributory negligence is on the plaintiff.   For the
court of this state says distinctly, speaking of contributory negli-
gence, when the plaintiff's horse was frightened by a discharge
from the defendant's quarry, "evidence that the horse was vicious
and unruly·was to show contributory negligence and was matter in
defense."   Court set aside a verdict for the plaintiff because such
a defense was not allowed in trial below.   *Wadsworth* v. *Marshall*,
88 Maine, 263.

See also cases holding the same way.   *Thompson* v. *Duncan*, 76
Ala. 334; *Smith* v. *Railroad*, 35 N. H. 356; *Hough* v. *Railroad*,
100 U. S. 213.

That the death was caused by the act of God is no defense:
"To constitute an accident or casualty, or as the law sometimes
states it, inevitable accident, it must be such an accident as the
defendant could not have avoided by the use and the kind and
degree of care necessary to the exigency and in the circumstances
in which he was placed.

When the proof is all in, whether directly proved or inferred
from circumstances, if it appears that the defendant was doing a
lawful act and unintentionally hurt the plaintiff then unless it also

appears that the defendant is chargeable with some fault, negligence, carelessness or want of prudence, then plaintiff fails to sustain the burden of proof." *Brown* v. *Kendall*, 6 Cush. 292; 2 Greenleaf on Evidence, 85-92; 1 Am. and Eng. Ency. of Law, (1st ed.) 174; *Crosby* v. *Fitch*, 12 Conn. 410; *Railroad* v. *Reeves*, 10 Wall. (U. S.) 176; *Bowman* v. *Teal*, 23 Wend. (N. Y.) 306; *Sweetland* v. *B. & A. R. R.* 102 Mass. 276.

When the act of God and want of care concur in producing the injury, the negligent person is liable if without his negligence the injury would not have happened by the accident alone. *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Woodard* v. *Aborn*, 35 Maine, 271.

If the negligence of the defendant be in the direct causal connection with the injury and a violation of such reasonable care as a cautious and prudent man would take to protect his property from loss by ordinary wind, storm, rain, etc., then the one who is guilty of such negligence is liable. *Condict* v. *Railroad*, 54 N. Y. 500; *Converse* v. *Brainard*, 27 Conn. 607; *Denny* v. *Railroad*, 13 Gray, 481, 487; *Lake* v. *Milliken*, 62 Maine, 240.

*C. F. Woodard and O. F. Fellows*, for defendants.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

EMERY, J. The plaintiff's evidence goes only to the following extent. The defendants were operating in Bucksport, on the Penobscot River, a mill for the manufacture of barrel staves and heads from wood. They had occasion in the course of their business in September, 1897, to send some eight of their employees, including the plaintiff's intestate, up the river some two or three miles to raft and drive some logs down the river to the mill. The party detailed for this purpose assembled at the wharf near the mill a little before four o'clock on the morning of September 21, when it was quite dark. One of the defendants, Perkins, was in charge of the party and accompanied it. They launched into the water two small boats of the defendants known as "punts," put into them the pick-poles and other implements necessary for rafting

and driving the logs, and then embarked. In one boat was Mr. Perkins with four men. In the other boat were the other four men including the plaintiff's intestate. In this boat also was a lighted lantern. The first boat, that of Perkins, started off about four o'clock while the second boat, on which was the plaintiff's intestate, was still at the wharf. The first boat went safely up the river to its destination. The second boat did not arrive, and was not seen for some days afterward when it was found on the shore. Its crew were never afterward seen alive, and their drowned bodies were found at intervals afterward at different places up and down the river, that of the plaintiff's intestate among the rest.

After the first boat started, its crew did not see the second boat on account of the darkness, but they saw a light as of a lantern moving after them for some fifteen minutes or half a mile, when it disappeared. They heard no cries, and saw and heard nothing else indicating any disaster. At this time the river was comparatively smooth with little wind, but later, towards seven o'clock, it became rough from a rising gale of wind. The plaintiff's intestate was a young man nearly twenty-two years of age, and unacquainted with boats as the defendants knew.

The boat itself was an old punt made of inch pine boards with bottom and sides almost flat and straight, and with ends nearly square. It was about fourteen feet long, 3 1-2 feet wide, and 19 inches deep in the centre. Along one of its sides was an old crack which had been caulked with waste. The top part of one end had been split off, so that only about 7 inches of height of that end remained while the other end was 14 inches high. It did not appear which, or whether either, of the crew was in charge of the boat more than the others.

The four men in the boat were undoubtedly drowned in the river sometime that morning, but where, how and when that morning they were drowned is utterly unknown. Whether they fell overboard, or the boat capsized or foundered is left completely to conjecture.

The plaintiff insists that it can be logically inferred from this evidence that the drowning was the direct result of the unseaworth-

iness of the boat furnished by the defendants, and hence was the direct result of their fault. The defendants insist that it cannot be reasonably inferred from the evidence that the plaintiff's intestate at the time of the accident did not by his own want of care contribute to produce, the accident.

The plaintiff admits that contributory negligence on the part of her intestate would bar her action, but she argues that such contributory negligence should not be presumed and that if her evidence does not indicate its existence she is entitled to recover unless the defendants adduce evidence that it did exist. Her counsel have argued the proposition ably and vigorously with many citations especially from other states. The law of this state however is unmistakably and inexorably against her. More than a generation ago, in *Gleason* v. *Brewer*, 50 Maine, 222, this court declared through the able, learned and liberal-minded Mr. Justice KENT that:—"The law is clear and unquestioned that the plaintiff must satisfy the jury, as an affirmative fact to be established by him as a necessary part of his case, that at the time of the accident he was in the exercise of due care." This clear and unqualified statement has been often affirmed since. In *State* v. *Maine Central R. R. Co.*, 76 Maine, 357, the court again said more tersely, but not less unmistakably:—"The burden is on the party prosecuting to show that the person killed or injured did not by his own want of care contribute to produce the accident." It also said that sometimes the plaintiff's own evidence shows that he by his own carelessness did thus contribute, but that it is equally fatal to him if his evidence fails to show that he did not thus contribute. The court has not made this repeated declaration by way of dicta but has made it the foundation of its judgment in several cases. *Buzzell* v. *Laconia Manufacturing Co.*, 48 Maine, 113; *Lesan* v. *Maine Central R. R. Co.*, 77 Maine, 87; *Chase* v. *Maine Central R. R. Co.*, 77 Maine, 62; *State* v. *Maine Central R. R. Co.*, 81 Maine, 84; *Giberson* v. *Bangor & Aroostook R. R. Co.*, 89 Maine, 337. It is useless to try to move the court from this ground so long and firmly maintained.

The plaintiff's counsel further urge that in dealing with moving

railroad trains persons should be apprehensive of danger and hence in case of accident should be held to adduce affirmative evidence of their own care, and that the rule in question has grown out of such cases, and should not be extended to cases like this, where the plaintiff's intestate had no acquaintance with boats and could not apprehend danger. The rule, however, will be found to have been applied to all cases of negligence in this state. The inquiry has always been whether the plaintiff's evidence showed affirmatively, either directly or by inference, that he did not by his own fault contribute to the accident.

Counsel again urge that the rule has been too broadly stated and that the true rule, even in this state, as to the burden of proof upon the issue of contributory negligence may be stated thus:—If the circumstances disclosed and left unexplained indicate any contributory negligence then the burden is on the plaintiff to explain the circumstances, and to show that after all he was free from fault; but that if the circumstances disclosed do not indicate any contributory negligence, there can be no presumption of any such negligence, and there is nothing for the plaintiff to rebut or explain.

It is true that the plaintiff's freedom from contributory negligence can sometimes be reasonably inferred from the circumstances without direct evidence of what he did or left undone. When a plaintiff is injured while merely passive in the care of the defendant, without any active agency of his own in the matter, it is fairly inferable that he did not contribute to the injury. In the case of an injury to a passenger in his seat in a railroad train, caused by the train leaving the track or by a collision, he is merely passive in the care of the railroad company, and his freedom from fault affirmatively appears from the shown circumstances. In his seat, in the place assigned to him by the railroad company, he evidently could do nothing to bring about, or prevent such an accident. In the case of the engineer or conductor of the train, or in the case of any person who might be exercising any active agency in the matter, such freedom from fault would not be apparent. So in a disaster to an unseaworthy ship, a person on board, shown by the evidence to be merely passive in the place

assigned to him, would affirmatively appear to be without fault, while other persons on board, not shown by the evidence to be merely passive in their proper places, would need to show by other evidence their freedom from fault.

But in all cases the plaintiff's freedom from contributory negligence in the particular case must affirmatively appear in evidence or at least by some legitimate inference from the evidence. It is not to be presumed. If sought to be established by inference it must be by inference from facts in evidence in the case. It cannot be inferred from general conduct, nor from the habits or instincts of mankind, nor from the argument that men are likely to be careful in danger. It is as true that men are careless as that they are careful. It is as true that men negligently contribute to their own injury as that they do not. We maintain the statutory rule stated in *Chase* v. *Maine Central R. R. Co.*, 77 Maine, 62, that the plaintiff must affirmatively show by evidence that in his case he was free from contributory negligence.

The plaintiff in this case cites *Guthrie* v. *Maine Central Railroad Co.*, 81 Maine, 572, as such a departure from the rule as to authorize her to proceed with this action. That case, however, was decided strictly in accordance with the rule. Guthrie, a brakeman, was injured by the coming together of two box-freight cars, the bumpers and draw bar upon one of them having been broken off, so that the cars came much nearer together than usual and sufficiently near to injure a person between them. The defective car was stationary and the plaintiff was on top of a moving train of freight cars backing up to couple on the defective car. He was directed by the conductor to run to the rear car and "make the hitch," meaning for him to go down between the cars and couple them. In compliance with this order he ran along over the top of the train and was seen to begin the descent of the ladder on the end of the car first approaching the defective car. In descending his back was to the defective car and he would not know of its defective condition. While no one saw him at the moment of the injury, and he instantly became unconscious and had no memory of it himself, it was apparent that he was injured

by the absence of the draw bar and bumpers from the defective car, which permitted the cars to come so close together as to crush him while between them in the performance of his duty. He was in his proper place, the place assigned to him. As to the condition and movement of the cars he was passive. He could not see the defect. He did nothing to bring the cars so close together. He could do nothing to prevent it. The collision was too sudden to give him any chance to extricate himself by any amount of care, after he had begun to descend the ladder. The evidence for the plaintiff tending to show all these facts affirmatively, the court properly decided that the case should go to the jury.

In several cases decided by this court the application of the rule led to a different result. In *Chase* v. *Maine Central R. R. Co.*, 77 Maine, 62, the plaintiff's intestate, while driving in a sleigh over a railroad crossing, was hit and killed by a passing train. No one saw him at the time. No evidence was given as to how the accident happened. It did not appear from the evidence that in approaching the railroad track he had taken any precautions to ascertain whether a train was coming. It did not affirmatively appear from the evidence that he could not have avoided the collision by the exercise of due care on his part. In *State* v. *Maine Central R. R. Co.*, 81 Maine, 84, the plaintiff's intestate, a passenger, was last seen alive as he was passing through the train toward the rear while the train was in motion. He was found next morning dead upon the track, with severe wounds and fractures. The plaintiff claimed that he fell off the train solely by reason of a defective platform on one car in the rear, but there was no evidence as to what he was doing or attempting to do at the time of the accident, nor how the accident happened. He was not shown to be in his seat, nor to be merely passive in the matter. As in the case of Chase, it did not appear from the evidence that he could not have avoided the accident by the exercise of due care. In *Giberson* v. *Bangor and Aroostook R. R.*, 89 Maine, 337, it could not be inferred from the evidence that the plaintiff's intestate took the proper precautions in crossing the railroad track.

Recurring now to the plaintiff's evidence in this case, it is pain-

fully wanting upon the affirmative of the proposition that the plaintiff's intestate at the time of the accident did not by his own negligence contribute to produce the catastrophe. He was alive in the boat at the wharf, at four o'clock on the morning of September 21, and days afterward was found dead on the shore. All between is a blank. Perhaps it sufficiently appears that he came to his death by drowning within a few hours after the preceding boat left the wharf, but that is all. If the following light, observed by the crew of the first boat, was the lantern in the second boat, its disappearance is no evidence of disaster at that time. The lantern may then have been placed in the bottom of the boat as would be usual. No sounds indicating trouble were heard at that time or ever. There is nothing indicating where or how the drowning took place, nor what the plaintiff's intestate was doing or attempting to do at the time, nor that he was passive. He may have fallen out of the boat, and the others swamped the boat in trying to rescue him. He may himself have swamped the boat by his own acts. The boat may have come in contact with a floating log, or run upon a ledge, or may have been capsized by the rough water, or by the swell of a passing steamer, or may have sunk for want of bailing, or, as contended by the plaintiff, may have foundered solely by being overloaded in its defective condition. All is conjecture however. The evidence does not indicate any one course of events more than another. The sad result is all that is shown. The evidence does not show that the plaintiff's intestate did in any way contribute to the drowning, but it does not show affirmatively that he did not, and this latter lack in the evidence is fatal to the plaintiff's action. *State* v. *Maine Central R. R.*, 76 Maine, 357.

The rule herein affirmed may seem to work a hardship in such a case as this, where the plaintiff is prevented from compliance with the rule by the suddenness and magnitude of the disaster itself sweeping away all possible evidence, but if the rule were otherwise it would work equal hardship to a defendant. It is not a peculiar hardship however. Many meritorious claims and defenses often fail for want of legal evidence to establish them. Judgments of courts, however, should never be based upon conjecture, but always and only upon evidence.      *Exceptions overruled.*