Hillsborough, }
Jan. 1, 1907. }

### WRIGHT, *Adm'x, v.* BOSTON & MAINE RAILROAD.

The circumstances of an accident may warrant a finding of due care on the part of a person injured, in the absence of direct evidence tending to prove his negligence.

In an action to recover damages for personal injuries alleged to have been caused by the defendant's negligence, it is incumbent upon the plaintiff to prove by a preponderance of evidence, either direct or circumstantial, not only that the defendant was guilty of negligent acts adequate for the infliction of the injury complained of, but also that the person injured was in the exercise of ordinary care under the circumstances.

A legal presumption establishing the burden of proof upon a given issue is not, also, evidence to be considered by the jury.

The "instinct of self-preservation" alone does not warrant a finding that a pedestrian who was killed by a locomotive at a grade crossing was in the exercise of due care.

It cannot be inferred that a plaintiff performed his duty to exercise the care of the ordinarily prudent man, in a given situation, in the absence of evidence, direct or circumstantial, of what he in fact did at the time of his injury.

CASE, for negligence in consequence of which Harlie C. Wright, the plaintiff's intestate, was killed at a grade crossing in Nashua. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1906, of the superior court by *Stone, J.*, on the defendants' exception to the denial of their motion for a nonsuit.

There was evidence tending to prove the following facts: On March 5, 1905, at about nine o'clock in the evening, Wright, who was on foot and alone, attempted to pass over the defendants' tracks at the Elm-street crossing, where there are three tracks running east and west. Just before the accident Wright was seen by a woman who was approaching the crossing from the opposite side, and he had then passed over the first track and was walking

toward her. She saw an engine and a single car approaching on the third track—the one nearest her—and waited for it to pass. After it had passed she did not see Wright, who was evidently killed by the engine at the crossing. There was also evidence tending to show negligence on the part of the defendants in not having a flagman at the crossing, and in not ringing the bell or blowing the whistle before the engine reached the crossing. It was also claimed by the plaintiff that the view of the track was somewhat obstructed by cars.

*Doyle & Lucier* and *Wason & Moran*, for the plaintiff.

*Burns & Burns* and *Hamblett & Spring*, for the defendants.

WALKER, J.   In *Huntress* v. *Railroad*, 66 N. H. 185, 190, the court say: "A person of ordinary prudence, exercising the caution and vigilance which the law has adopted as the test of duty, might make an extremely hazardous attempt to cross a railroad in front of a train. From the mere fact of great danger, it does not necessarily follow that he exposed himself recklessly and consciously. When there is no evidence of insanity, intoxication, or suicidal purpose, and no evidence on the question of his care, except the instinct provided for the preservation of animal life, it may be inferred from the circumstantial proof that, for some reason consistent with ordinary care and freedom from fault on his part, his attempt to cross was due to his inadequate understanding of the risk." The argument seems to be that, because a man may, while in the exercise of ordinary care and while governed by an instinctive desire to avoid danger, attempt to do a very dangerous thing, it may be found by the jury as a fact that a particular man killed at a railroad crossing was not negligent. That reasoning applied to this case would justify the jury in concluding that the deceased saw the approaching engine and, for some undisclosed and in fact undiscoverable reason, consistent with ordinary care, attempted to cross the track in front of it. Granting that that may possibly be the explanation of the cause of his fatality, is it not just as probable that it was due to acts on his part not consistent with ordinary care? It may be that he miscalculated the speed of the engine or its distance from him, or it may be that, without such miscalculation, he decided to incur the hazard and trust to his agility to carry him safely over. In short, he may have been negligent, or he may not have been.

The natural desire to avoid pain, suffering, and death may have caused him to take a view of the situation when he was in a place of safety, and it may have prevented him from hurling himself

directly in front of the engine; but it did not necessarily invest him with all the qualities of an ordinarily careful man in deciding whether it was prudent to cross in front of the train—it did not urge him when in a place of safety to attempt to cross when he saw the train approaching. No emergency had arisen which threatened him with peril. If he had found himself in a perilous situation, his acts might be justified though they were dangerous and ill-advised. *Folsom* v. *Railroad*, 68 N. H. 454. But he was not in such a situation. Until he stepped upon the third track, he knew, if he saw the train, that he was in no peril. He knew that he was perfectly safe if he remained there until after the train passed. *Central of Georgia Ry.* v. *Foshee*, 125 Ala. 199, 215. There was nothing urging him to cross. It does not appear that his business was of an urgent character requiring great haste and expedition, or that there was any excuse for his hazardous attempt. The instinct of self-preservation would have suggested delay in a safe position, instead of haste to get into an unsafe one.

When it is said that he may have miscalculated the distance and speed of the train, caused in part by the omission to ring the bell, it is sufficient to reply that, in the absence of evidence of the fact, he may have realized the nearness of the train and attempted to prove his fleetness by running onto the track in front of it. This is not equivalent to saying that he may have "recklessly and consciously" jumped upon the track. His natural desire to protect himself from harm would probably prevent him from consciously committing suicide, while it would not prevent him from negligently attempting to cross the track. If negligence were the willful, conscious recklessness of a man in a given situation, the desire to protect life and limb might constitute sufficient evidence, in the absence of all direct affirmative evidence, that he was not negligent. "Doubtless, the jury might infer that the deceased was governed by the natural instinct of self-preservation, and would not put himself recklessly and consciously in peril of death; but that men are careless and subject themselves thereby to injury is the common experience of mankind, and when injured, no presumption exists in the absence of proof that they were exercising due care at the time." *Reynolds* v. *Railroad*, 58 N. Y. 248, 252. It may be conceded that it is a well-nigh universal characteristic of human nature, that men have an instinctive impulse to avoid physical pain and death; but it must be remembered that neither this, nor any other universal instinct, prevents them from being careless. Very few men intelligently seek death; but very many are guilty of negligence leading to fatal results. If the question in this case were, whether the deceased consciously threw himself upon the track or wished to commit suicide, it might be legitimate

to infer that he did not knowingly seek that fatality.　But because that may be a proper deduction, it does not follow that he also used ordinary care, or was not negligent, in seeking to preserve his life while running across the track in front of the engine.　His purpose undoubtedly was to get across in safety; the attempt may have been a foolhardy one, one of which the ordinarily prudent man would not have been guilty, and still it may not have involved the element of conscious recklessness.　As before suggested, he may have trusted in his agility to preserve him from being overtaken by the locomotive.　In short, he may have been negligent without being willfully reckless.　Hence it follows, that while the instinct of self-preservation may be evidence that he did not willfully commit suicide, it does not prove that he was not negligent.

To say that he miscalculated the nearness of the engine, because some men have made that mistake, is to give the plaintiff the benefit of pure speculation as evidence of his careful conduct.　It is no more probable that he observed the locomotive and estimated that he had sufficient time to safely cross to the opposite side of the track, than that he was lost in reverie, or for some other reason did not see or try to see whether a train was approaching, or that, having observed the engine, he negligently took the chance of getting across in front of it.　If men in general do not go upon railroad grade crossings without ascertaining in some way whether a train is approaching, they do not, after having ascertained that it is approaching, attempt to protect themselves from personal injury by rushing in front of it, upon a hasty calculation of chances as to its speed or nearness.　The great majority of men do not try experiments of that character; consequently, the great majority of men are not maimed or killed while attempting to cross railroad tracks in front of approaching trains.　Such fatalities are comparatively rare; and that fact, so far as it authorizes any inference in a given case as to the care exercised by the deceased, does not show that he was in the exercise of that degree of care which ordinarily prudent men exercise under similar circumstances.　Though prudent men sometimes expose themselves to danger through mistakes of judgment, it cannot be inferred in all cases that such is the explanation of their conduct when the evidence is wholly silent upon the subject.　In such a case, it is pure conjecture whether the deceased exercised the care of an ordinarily prudent man to avoid the fatal catastrophe, or whether he did not.　The only possible solution of the question depends upon a mere calculation of chances.　One answer is as liable to be right as the other.　He may have been reasonably careful, or he may have been unreasonably careless.　Which alternative is the more probable is susceptible of no logical proof and can be only tentatively

ascertained by the merest guessing. A man who is ordinarily prudent may in a particular instance be negligent.

In some cases the deceased's care may be reasonably inferred or found from the circumstances attending the accident. When a passenger, for instance, seated in a passsenger car, is killed by a collision with another train, little doubt can be entertained that he is in the exercise of due care; and in an action by his administrator no further evidence upon that point would be required in the first instance. Other similar illustrations might be suggested, indicating conclusively that the care required of the plaintiff in an action for negligence may be proved by circumstantial evidence; that direct affirmative proof may be dispensed with, when upon the competent evidence reasonable men exercising their judgment upon the subject could say, from the manner in which the injuries were inflicted, that it is more probable than otherwise that the deceased was in the exercise of due care, or that no amount of care on his part would have prevented his injury. "It is well settled in cases of this character that direct affirmative evidence that the plaintiff was exercising due care is not necessary; it may be inferred from all the circumstances attending the accident and from the lack of evidence indicating carelessness on his part." *Stevens* v. *Company*, 73 N. H. 159, 173.

In *Lyman* v. *Railroad*, 66 N. H. 200, the motion for a nonsuit was denied because there was evidence that the deceased, who was attempting to cross the track riding on a horse-rake, had before taken special precautions to protect himself from injury at this crossing; and it was held that this fact was evidence from which it might be inferred he was exercising due care at the time of the accident. Besides, the circumstance that he was driving a horse might have a material bearing upon the question of his care (*Folsom* v. *Railroad*, 68 N. H. 454, 460), while a person on foot about to cross a track has no forces to control except his own voluntary and intelligent actions. The decision in *Lyman* v. *Railroad* does not hold that the instinct of self-preservation alone is sufficient evidence that the deceased was careful or not negligent, for it was unnecessary to so hold. When it is said that a person's careful conduct may be inferred from the circumstances, it is not intended to announce the doctrine that the jury may find the fact by guessing. The circumstances must be logically such that the jury may deduce the fact from them by some process of human reasoning. And in all analagous cases in this state some special circumstances have appeared from which reasonable men might logically find the fact of due care. With the possible'exception of *Huntress* v. *Railroad*, *supra*, no case has been put on the ground of the instinct of self-preservation. Some evidence of care, either direct or indirect,

has appeared, when it has been held that the plaintiff sustained the burden of disproving contributory negligence. See *Nutter* v. *Railroad*, 60 N. II. 483; *Evans* v. *Railroad*, 66 N. H. 194; *Lyman* v. *Railroad*, *supra*; *Davis* v. *Railroad*, 68 N. II. 247; *Folsom* v. *Railroad*, 68 N. II. 454; *Smith* v. *Railroad*, 70 N. H. 53; *Gahagan* v. *Railroad*, 70 N. II. 441; *Waldron* v. *Railroad*, 71 N. H. 362; *Tucker* v. *Railroad*, 73 N. II. 132; *Brown* v. *Railroad*, 73 N. II. 568. It is at least significant that the court, in denying the motion for a nonsuit in cases where the plaintiff's intestate was killed at a railroad crossing, and there was an entire absence of direct evidence showing what his acts in fact were, has based its decision on some circumstance connected with the accident, and not on the instinct of self-preservation, which in the Huntress case was deemed to be sufficient evidence of care.

In cases where there was active participation by the deceased in bringing about the dangerous situation, and the duty rested upon him, as well as upon the defendant, of actively and vigilantly exercising ordinary care under the circumstances, the absence of all evidence of what he did at the time cannot be supplied by conjecture, or by a theory which is as liable to be false as true. The instinct of self-preservation may furnish an explanation or excuse for his careless acts after he got into a place of danger, but it is not evidence that his acts were the acts of an ordinarily prudent man before the danger became imminent. Standing two or three feet from a railroad track when a train is about to pass is not ordinarily a dangerous situation for a man to occupy (*Waldron* v. *Railroad*, 71 N. H. 362, 365), and his protection from harm does not then depend upon acts suggested by an instinctive impulse to avoid danger, but upon his intelligent exercise of ordinary care. If from that position he runs upon the track and is killed, never having before shown signs of mental derangement, are the jury to be allowed to find that he was exercising due care, because they may think he was anxious to avoid being killed and may possibly have miscalculated the speed of the train? If his acts so far as known were as likely to be negligent as careful, it is strange logic to hold that a presumption that he desired to avoid death shows he was guilty of no negligence.

The fallaciousness of this position seems to be recognized by the courts that sustain it, when they restrict the operation of the presumption to cases where there is no direct evidence of what the deceased's acts were, as in *Newport etc. Co.* v. *Beaumeister*, 102 Va. 677; *Reynolds* v. *Keokuk*, 72 Ia. 371; *Ellis* v. *Leonard*, 107 Ia. 487, 489; *Gay* v. *Winter*, 34 Cal. 153, 164. If the presumption is of sufficient evidentiary value to sustain the burden of proving due care when there is no direct evidence on the subject,

it is difficult to understand why it has no probative force when the evidence is conflicting or inconclusive. Why may it not outweigh the testimony of a prejudiced or ignorant witness; or why, if it is sufficient to prove the due care of a dead man, may it not be equally useful for a live man? That the only witness who could explain the matter is dead, does not make that evidence, which, if he were alive, would not have that character.

Since the jury are not permitted to find material facts without sufficient legal evidence (*Deschenes* v. *Railroad*, 69 N. H. 285; *Carr* v. *Electric Co.*, 70 N. H. 308; *Dame* v. *Car Works*, 71 N. H. 407; *Reynolds* v. *Fibre Co.*, 73 N. H. 126, 131), the inquiry arises at this point, upon the motion for a nonsuit, whether the burden of proving that the deceased was reasonably careful is upon the plaintiff, or whether it is for the defendant to prove that he was careless. If the former is the rule to be applied, it would seem that the plaintiff must be nonsuited; if the latter rule is followed, the plaintiff has made out a *prima facie* case and is entitled to go to the jury. There is a great conflict of authority upon this subject. 1 Thomp. Com. Neg., ss. 364–369. But in this jurisdiction it has been uniformly held that the plaintiff, in an action to recover damages for personal injuries alleged to have been caused by the defendant's negligence, must prove by a preponderance of evidence, not only that the defendant was guilty of negligent acts adequate for the infliction of the injury received, but also that he exercised ordinary care for his own safety under the circumstances, or, in other words, that he was free from fault contributing to cause his injury. "From the fact of injury no presumption arises as to the guilt or innocence of either party. The plaintiff is, therefore, in suits for injury upon a railroad crossing, as in all cases for negligence, bound to prove that his injury was not due to his own fault, but was caused by the fault of the defendant. . . . Hence the plaintiff, to entitle him to submit his case to the jury, must produce evidence sufficient to render reasonable a finding that he was free from fault." *Gahagan* v. *Railroad*, 70 N. H. 441, 444. Some text-writers have inaccurately stated the New Hampshire rule otherwise. See 1 Thomp. Com. Neg., s. 366; Beach Cont. Neg., ss. 426, 440.

Whether, therefore, the plaintiff should have the burden of proving his carefulness in such a case, or whether he has made out a *prima facie* case by submitting sufficient evidence of the defendant's negligence only, leaving it for the latter to prove the plaintiff's carelessness as a matter of defence, are questions whose discussion at this time would serve no useful purpose. To hold in substance that the plaintiff sustains this burden by submitting no evidence of it, except conjecture and speculation, is little less

than an entire change of our procedure in such cases, and the substitution of the rule which throws the burden of proving the issue of the plaintiff's conduct upon the defendant. It is an apparent contradiction of terms to say that the plaintiff may sustain the burden of proof by presenting no evidence except the bare fact that the deceased was killed by a locomotive at a grade crossing. It would be much more consistent and logical to adopt the language of Mr. Beach (Cont. Neg., s. 426) where he says that, under the rule imposing the burden of proof upon the defendant, "the plaintiff has made his case when he has shown injury to himself and negligence on the part of the defendant which was a proximate cause of it. It then devolves upon the defendant to allege and prove contributory negligence as a matter of defence, the presumption being in favor of the plaintiff, that he was at the time of the accident in the exercise of due care, and that the injury was caused wholly by the defendant's negligent misconduct." In other words, it would be better to change our rule relating to the burden of proof in such cases, than, nominally retaining it, to indirectly deprive it of all vigor or force.

Thompson (2 Com. Neg., ss. 1622, 1623), in discussing this question, recognizes that the presumption of right-acting on the part of a plaintiff does not apply in jurisdictions where the burden of showing carefulness is on the plaintiff, and he says (s. 1623): "We may conclude this discussion by saying that, in those jurisdictions where the rule obtains that the person killed or injured is presumed to have been in the exercise of due care, and where the burden of showing the contrary is on the defendant, the question whether the circumstances attending the death of a traveler killed at a railway crossing are such as to warrant the presumption that the traveler, prompted by the instinct of self-preservation, exercised the care which the law demands of travelers in such cases,—there being no witness to the accident and no evidence speaking upon the question of the manner in which the deceased approached and went upon the track,—will be a question of fact for the jury." The whole difficulty seems to result from the different rules employed to determine the question of the burden of producing evidence upon the issue of the plaintiff's care. Where the law is that that burden is upon the plaintiff, as in this state, it is overlooked or disregarded by holding that he is not obliged to submit evidence, either direct or indirect, of his conduct, but may satisfy the rule by invoking a presumption of right-acting. Cases, therefore, decided upon a different theory of the burden of proof, which seem to enforce that presumption (*Cleveland etc. R. R.* v. *Rowan*, 66 Pa. St. 393; *Weiss* v. *Railroad*, 79 Pa. St. 387; *Northern etc. Ry.* v. *State*, 29 Md. 420; *Southern Ry.*

v. *Bryant*, 95 Va. 212; *Petty* v. *Railway*, 88 Mo. 306; *Atchison etc. R. R.* v. *Hill*, 57 Kan. 139), cannot be useful authorities in this jurisdiction. See, also, *Continental etc. Co.* v. *Stead*, 95 U. S. 161, 164; *Texas etc. Ry.* v. *Gentry*, 163 U. S. 353, 356; *Baltimore etc. R. R.* v. *Landrigan*, 191 U. S. 461, 473.

Legislation may establish a rule of procedure and require a defendant to prove in the first instance the contributing negligence of the plaintiff. See *Foss* v. *Baker*, 62 N. H. 247, 250; *Walsh* v. *Railroad*, 171 Mass. 52. It may perhaps even go so far as to make the injury received evidence for the plaintiff of the defendant's negligence, throwing the burden upon the latter of proving his freedom from fault. But whatever the rule may be as to the burden of proof, or as to the duty of producing evidence in the first instance to prove or disprove a fact in issue, it cannot itself be evidence to be weighed with other evidence in ascertaining the ultimate fact. The burden of going forward with proof is not a species of evidence for the consideration of the jury. It is merely a rule of law, based in part on expediency and convenience in the trial of cases, and in part, in some instances, on a presumption of law derived from a conception of the conduct of men in general. But as said by *Doe*, J., in *Lisbon* v. *Lyman*, 49 N. H. 553, 563: "A legal presumption is not evidence. In civil cases, it is the finding of a fact or the decision of a point, when there is no testimony, and no inference of fact from the absence of testimony, on the subject, or when the evidence is balanced. And often the fact is also found, or the decision made, by the rule of law which imposes the burden of proof on the party having the affirmative."

In his Treatise on Evidence, Professor Thayer says (*p.* 314): "Presumptions are aids to reasoning and argumentation, which assume the truth of certain matters for the purpose of some given inquiry. They may be grounded on general experience, or probability of any kind; or merely on policy and convenience. On whatever basis they rest, they operate in advance of argument or evidence, or irrespective of it, by taking something for granted; by assuming its existence." And on page 337 this language occurs: "While it is obvious, then, that a presumption, *i. e.*, the assumption, intendment, taking-for-granted, which we call by that name, accomplishes, for the moment at any rate, the work of reasoning and evidence, it should be remarked, as I have said before, that neither this result, nor the rule which requires it, constitutes, in itself, either evidence or reasoning. This might seem too plain to require mention if it were not for the loose phraseology in which courts sometimes charge the jury, leaving to it in a lump ' all the evidence and the presumptions,' as if they were capable of being weighed together as one mass of probative matter."

If there is a legal presumption that the ordinary man performs his duty and is not negligent, it is no more competent as evidence to prove the fact in a particular case, in the absence of other proof, than are other rules of law, including the presumption' of innocence in criminal cases.

The views thus far expressed seem to be abundantly supported by the cases that are in point. In *O'Reilly* v. *Railroad*, 82 N. Y. App. Div. 492, a case very similar to the present, the court say (*p.* 495): "In fine, the record does not show that the deceased took any precautions whatever, and it does tend to show that, if he had done so, he would have seen the approaching car and escaped it, for the witness Shanley saw it rapidly approaching, lighted by electricity, and with the usual rumble of such a vehicle. I think that the plaintiff did not meet the obligation to show the absence of contributory negligence of her intestate. . . . Even where the evidence upon such question points neither way, the plaintiff fails."

In *Wiwirowski* v. *Railway*, 124 N. Y. 420, it was held that, while want of contributory negligence on the part of a person killed at a railroad crossing may be established by inferences from the circumstances, such an inference may not be drawn simply from a presumption that a person exposed to danger will exercise care and prudence in regard to his own safety. In *Cordell* v. *Railroad*, 75 N. Y. 330, 332, it is said: "When a person has been killed at a railroad crossing, and there are no witnesses of the accident, the circumstances must be such as to show that the deceased exercised proper care for his own safety. When the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited. The presumption that every person will take care of himself from regard to his own life and safety cannot take the place of proof; because human experience shows that persons exposed to danger will frequently forego the ordinary precautions of safety." *Reynolds* v. *Railroad*, 58 N. Y. 248, is to the same effect.

In *Walsh* v. *Railroad*, 171 Mass. 52, 56, the court say: "There is nothing to show that the plaintiff's intestate, as he approached the crossing, looked, or listened, or took any precautions to ascertain whether a train was coming. It is true that he may have been misled somewhat by the absence of the statutory signals, if those were not given, and by the open gates and the want of a light, and that, if he had looked, his view of the approaching train might have been obscured by trees, fences, and buildings. But whether he was misled, or whether he looked or listened, or tried to look or listen, is all a matter of conjecture. . . . And the circumstances do not appear to have been such as to excuse him

from exercising the care which every traveler is bound to exercise as he approaches a railroad crossing." See, also, *Livermore* v. *Railroad*, 163 Mass. 132, 133 ; *Moore* v. *Railroad*, 159 Mass. 399, 403.

In *McLane* v. *Perkins*, 92 Me. 39, 46, it is said : " But in all cases the plaintiff's freedom from contributory negligence in the particular case must affirmatively appear in evidence, or at least by some legitimate inference from the evidence. It is not to be presumed. If sought to be established by inference, it must be by inference from facts in evidence in the case. It cannot be inferred from . . . the argument that men are likely to be careful in danger. It is as true that men are careless as that they are careful. It is as true that men negligently contribute to their own injury, as that they do not." See, also, *Chase* v. *Railroad*, 77 Me. 62 ; *Day* v. *Railroad*, 96 Me. 207.

When the question is what a man did under a given state of facts, it is not often proved by showing or assuming what men in general would have done. What the average man would probably have done may furnish a standard by which to determine the legal duty of the man whose conduct is in question. When it is known what in fact he did, the question whether he performed his duty arises, which often, especially in cases for negligence, depends upon the conduct which the average man might be expected to disclose under similar circumstances. But this rule or principle which determines the degree of care which the law requires cannot also be used as evidence, to prove that the conduct in question was that of the ordinarily prudent man. It does not furnish both the measure and the thing measured.

The physical actions of a man, which are subject to his volition and control, cannot ordinarily be determined by presumptions based upon our general knowledge of human nature. We may be able to say that a machine will act in a certain way when subject to known forces, and so far as man is a machine we can calculate with some degree of certainty how he will act under known conditions. But so far as his actions are governed by his will, intelligence, and judgment, we cannot know what his specific acts were in a special situation, unless it is true that all men would act alike in the same situation. If the question is whether A used good judgment in a business transaction with B, there is no presumption that he did what men in general would do under the circumstances, because it was his privilege to do differently. The fact that the great majority of minors are not emancipated is not evidence where the fact of the emancipation of a particular minor is in issue. *Lisbon* v. *Lyman*, 49 N. H. 553. The fact that the great majority of men pay their debts is not evidence of payment in an action of assumpsit upon a contract. *Kendall* v. *Brownson*,

47 N. H. 186. The fact that the great majority of mankind regard a certain religious doctrine as absolutely irrational and false is no evidence that a particular person entertained that opinion. *Spead* v. *Tomlinson*, 73 N. H. 46, 63. If there is a presumption of the sanity of a party, in the absence of evidence to the contrary, because most men are sane (*State* v. *Pike*, 49 N. H. 399, 408, 444), it relates to a mental state or condition independent of volition and not controlled or produced by intelligent mental effort. Upon the same ground it may be inferred that a person's senses of sight, hearing, and feeling are ordinarily acute. But the proposition that a man acted in one of several different ways in a specific instance, because a jury may happen to think that an ordinarily prudent man would have so acted, is illogical and substitutes pure conjecture for proof. As a matter of substantive law, he is bound to exercise ordinary care; but that legal duty does not become legal evidence that he was free from fault. A plaintiff who has the burden of presenting evidence of that fact does not prove it, in the absence of direct evidence, by a legal presumption. The burden of proof cannot be shifted in that way upon the defendant. Nor as a practical proposition is such a method of reasoning logical. To infer that the plaintiff's intestate exercised the care which the average man of ordinary prudence would probably have exercised, from the mere fact that he belonged to the human species, is to guess that he was, in respect to carefulness of conduct at a particular time, the equivalent of the average man of ordinary prudence, and from this to infer that his voluntary acts were careful and prudent. The minor premise in the syllogism is pure conjecture; hence the conclusion is worthless.

Since, therefore, it was incumbent on the plaintiff to present some evidence for the consideration of the jury tending to show that the deceased was exercising due care at the time he received his fatal injury, and since the instinct of self-preservation, if deemed evidence for any purpose, does not explain how or why he got upon the track in front of the approaching engine, and since legal presumptions of right-acting have no probative, evidentiary force, the motion for a nonsuit should have been granted. Whether the fact that the deceased in this case was traveling on foot, while in the Huntress case the deceased was riding in a team, constitutes an important distinction between the two cases, it is unnecessary to inquire. If it does not, the Huntress case must be overruled. This result makes it unnecessary to decide whether there was sufficient evidence of the defendant's negligence.

*Exception sustained.*

All concurred.