Belknap,  }
Feb. 2, 1932. }

Oscar E. Davis, *Adm'r v.* Nox-All Shoe Company.

*Tilton & Tilton* (*Mr. Frederick A. Tilton* orally), for the plaintiff.

*William H. Sleeper* and *John W. Perkins* (*Mr. Perkins* orally), for the defendant.

Branch, J.  Edith B. Davis, the plaintiff's intestate, lost her life in a fire which destroyed the defendant's shoe factory in Alton upon January 13, 1930.  She was at that time employed as a bookkeeper in the defendant's office.  The specific ground of negligence upon which the plaintiff relies is the failure of the defendant to have the doors of its factory open outward instead of inward.  It is the contention of the plaintiff that the method of construction adopted by the defendant constituted a violation of the statute which reads as follows: "Every building in which laborers are employed shall be provided with sufficient means of escape, in case of fire, by more than one exit, each of which shall be at all times free from obstruction and ready for immediate use.  Every door leading into any such building shall be so constructed as to open outward when practicable, and shall not be so locked, bolted or fastened during working hours as to prevent free egress."  P. L., *c.* 147, *s.* 12.

There were two sets of double doors which led into the defendant's factory, both opening inward. The doors at the main entrance led into a hallway approximately fourteen (14) feet long and twelve (12) feet wide from which there was a door opening into the office enclosure on the right hand side and "a little nearer the rear." At the back end of the hall another door opened into the so-called shipping room which was a large room used principally for storage and occupying the greater portion of the first floor of the factory building. On the left hand side of the hall was a stairway which led to the upper floors. The other set of double doors opened directly into the shipping room. The office was located between these two sets of doors, and in the side of the office enclosure, opposite the main hallway, was another door which opened directly into the shipping room.

It was customary to use only the left hand door of the main entrance for the purpose of entering and leaving the factory. The right hand door was usually locked with bolts at the top and bottom which were operated by a single handle. When the left hand door was shut it was fastened against the other door by a "regular fastener" which appears to have been an ordinary latch.

There is very little evidence in the case which deals directly with the death of Mrs. Davis, and such as there is comes almost entirely from the testimony of the witness Curtin, who was the superintendent of the defendant's factory. He testified that at the time the fire was discovered he was on the second floor of the building and that he then ran down to the office and told Mrs. Davis they had better pick the books up and get out; that they then started picking up the books and Mrs. Davis was putting them in the safe. His testimony then continued as follows: "I noticed that the smoke was coming kind of heavy underneath the doors, so I ran out and grabbed her underneath the arm, and we started for the hallway. . . . I didn't think there was anything very serious. . . . Well, when I pushed that door open, there was a blast of smoke and heat come in there, and just about choked me. Of course, I forgot everything then, even Mrs. Davis. . . . I made a break for the door, and thought I was having trouble getting out there and the next thing I found myself out in the street. . . . My arms and face and ears and back of my head was pretty well burned. . . . I might have had hold of the right side of the door and I might have had hold of the wrong, but it appeared to me it was an awfully long time. . . ."

The plaintiff testified that when he reached the scene of the fire the doors at the main entrance were closed; that he tried to open the

left hand door but was unable to do so on account of pressure from the inside; and that after making this attempt he noticed Mr. Curtin just picking himself up in the snow.

After Curtin left the office as above described no other person saw Mrs. Davis alive. Her body was found after the fire in the corner of the shipping room opposite the office door at a point approximately sixty-eight (68) feet from the main entrance.

In this state of the proof the reason for Mrs. Davis' failure to escape from the building is entirely a matter of conjecture. The theory of the plaintiff that she followed Curtin into the main hallway and was unable to escape because she could not open the door fails for lack of evidence to sustain it. The instinct of self-preservation furnishes no basis for a finding that the deceased acted in this way. *Wright* v. *Railroad*, 74 N. H. 128. It is impossible to determine whether she ever entered the hallway or not, but the probabilities are that she did not. The fact that her body was found at a point far removed from the main entrance would indicate that she was driven back by the blast of fire and smoke which Curtin faced on opening the office door, and that she ran in the opposite direction.

Since there was no evidence on which to base a finding that the death of Mrs. Davis was due to the fact that the factory doors did not open outward it follows that the defendant's motion for a directed verdict should have been granted. *Deschenes* v. *Railroad*, 69 N. H. 285; *Dame* v. *Car Works*, 71 N. H. 407; *Proulx* v. *Goodrich*, 77 N. H. 297; *Vaughan* v. *Railroad*, 78 N. H. 615; *Nadeau* v. *Stevens*, 79 N. H. 502; *Russell* v. *Railroad*, 83 N. H. 246.

In view of this conclusion it is unnecessary to consider the questions of law raised by the defendant's other exceptions and the order here must be

*Judgment for the defendant.*

All concurred.