AXEL GEORGE JOHNSON

*vs.*

BANGOR RAILWAY AND ELECTRIC COMPANY.

Penobscot.    Opinion November 24, 1925.

*When the pleadings, all the testimony and exhibits are made a part of a bill of exceptions, under a stipulation that they are to control any statements thereof in the bill, such statements must be deemed to be true, and no corrections are to be made by the Law Court by a search of the record.*

*A refusal to order a portion of an answer stricken from the record is not exceptional error when it appears that the portion of the answer objected to is immaterial, and, if irresponsive, is not prejudicial.*

*The admission of a question put to an expert witness on cross-examination is not exceptional error, when it appears, although the subject matter of the inquiry was immaterial, the answer was harmless.*

The fact that the testimony of a witness expressed his opinion or inference does not necessarily render it objectionable. He may thus summarize many facts within his knowledge without specifying them. It is his manner of stating them. Such testimony is admitted from necessity.

An expert surgeon, who had examined the plaintiff at a time subsequent to the injury for the purpose of giving an opinion as to plaintiff's injuries, may give the history of the case as he learned it from the plaintiff. Such statements of the plaintiff, being a narrative of past events, are not admissible as evidence of the facts stated; but are admissible as part of the basis for the opinion. The reasons for an expert's opinion may be given upon his examination in chief.

In the instant case that the jury was properly instructed as to the competency of the statements of the plaintiff to the witness and the purpose for which they are admissible must be assumed, nothing appearing to the contrary.

On exceptions and motion by defendant. An action to recover damages for personal injuries alleged to have been sustained by plaintiff by reason of a collision between a street car of the defendant and the team of the plaintiff resulting in the plaintiff being thrown from his team and landing on his back. A verdict of $11,000.00 was rendered for the plaintiff and the defendant filed a general motion

for a new trial, and also entered during the trial several exceptions on the admission of testimony.    Motion and exceptions overruled.

The case appears in the opinion.

*Pattangall, Locke & Perkins, and Freeland Jones,* for plaintiff.

*Ryder & Simpson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, DEASY, BARNES, BASSETT, JJ.

MORRILL, J.    This action to recover damages for personal injuries is before the Law Court upon motion for a new trial in the usual form, and upon exceptions to rulings upon the admission of evidence. The argument upon the motion has been confined to the contention that the damages are excessive.

An examination of the record shows that the trial developed a decided difference of opinion between the expert witnesses summoned by the respective parties, as to the injuries which the plaintiff sustained.    The writ alleged, and the medical testimony for the plaintiff tended to show that the plaintiff sustained a fracture of the tenth dorsal vertebra.    The witnesses for the defendant denied that there were any indications of such fracture.    A large part of the record before us is taken up with the testimony of the expert witnesses. The counsel for defendant contends that the evidence so greatly preponderates in favor of his client, that the court should be satisfied that the jury manifestly erred, and that the damages are excessive. No claim of bias or prejudice on the part of the jury is made.    The argument is largely confined to the proposition that the jury did not give sufficient weight to the medical testimony in the light of plaintiff's condition before the accident.

In considering a case so presented it must be borne in mind that the testimony of the expert witnesses is only an expression of opinion, and is received upon the theory that their special learning and skill may render their opinions of service to the jury; that thus the jury may obtain some assistance, not otherwise available to them.    3 Wigmore on Ev., Sec. 1923, Page 2558.    The evidence may be stated as an assertion in the negative, as when a witness, examining an X-ray film of plaintiff's back taken by another, asserts that he perceives no indication of a fracture; yet the testimony is but the expression of the witness' opinion; his interpretation of what this highly scientific

aid to diagnosis shows; and its accuracy, or the weight to be given to it is quite dependent upon the skill of the operator who took the film, and the clearness which he has obtained, as well as upon the witness' own scientific skill.

The assistance which testimony of this character,—we refer to expert testimony in general,—may afford is, like other testimony, wholly for the consideration of the jury. They may fairly come to the conclusion that none of it, or a part only is entitled to weight in their deliberations. The testimony in this case well illustrates the limitations in the value of testimony of this kind. It was conceded by expert medical witnesses on both sides that at the date of the injury, January 29, 1923, Mr. Johnson was suffering from a condition of the back known as arthritis deformans, a progressive disease; it is the claim of the defendant that the plaintiff suffered no permanent injuries on account of the accident.

An eminent surgeon who first saw the plaintiff on December 19, 1923, testifying for the defendant, frankly gave this testimony at the close of the cross-examination:

"Q. Don't you think there was a pretty rapid progression in the trouble with his back that went on about January 29, 1923?

A. That I cannot answer.

Q. Caused by the accident?

A. I should not think it shows that there was an active process; I should not think it shows; I cannot tell that. *I don't know what happened.*

Q. That is the real fact, isn't it?

A. Yes, sir.

Q. That you could not tell because you don't know what did happen?

A. No, sir."

Another specialist in orthopedic surgery, who first saw plaintiff on May 8, 1924, a few days before the trial, testifying for defendant said:

"Q. If it was true that prior to January 29, 1923, Mr. Johnson was capable of doing heavy laborious work about his farm and did do that heavy laborious work every day and that since that time has been unable to do it and can only do light work, have you found anything in his condition which would account for that change?

A. I have not.

Q.   That is, the mere presence of arthritis would not account for it, would it?

A.   No, I do not think so.

Q.   That is of long standing?

A.   That is of long standing.

Q.   And if there is that change, if he is in fact unable to do heavy laborious work at the present time and has been since the 30th of January, 1923, and was able to do heavy laborious work prior to that time, how would you account for it?

A.   I do not account for it at all."

It will serve no useful purpose to analyze at length the testimony printed in the record.   We have endeavored to point out the character of the testimony on which defendant relies, and the inherent limitations of its value as aid to the jury.

It is apparent that after listening to the extended recital of the views of the expert witnesses the jury did not lose sight of the fact that the plaintiff was seriously injured, a fact which they were fully justified in finding, without undertaking to determine the precise injury, if they believed the evidence submitted in his behalf.   So finding, we cannot say that they manifestly erred in the award of damages.   We do not perceive any ground on which, under the motion, we are warranted in interfering with the verdict.

EXCEPTIONS.

The bill of exceptions contains the following statement:   "The pleadings and all testimony and exhibits are hereby made a part of these exceptions and are to control any statements thereof in this bill."

The court on several occasions has expressed disapproval of the practice of making the entire record a part of bills of exceptions to rulings on the admission or exclusion of evidence.   The essential requirements of a bill of exceptions, presented in a "summary manner" (R. S., Chap. 82, Sec. 55) have been clearly indicated.   *McKown* v. *Powers*, 86 Maine, 291, *Salter* v. *Greenwood*, 112 Maine, 548, *Dennis* v. *Packing Co.*, 113 Maine, 159, *State* v. *Howard*, 117 Maine, 69, *Small* v. *Wallace*, 124 Maine, 366.   Nor should the Law Court be expected to correct statements in a bill which has been allowed and signed by the presiding Justice, by a search of the record.   The

exceptions should not be allowed unless found to be true; "when found true they shall be allowed and signed by such justice." Section 55, supra. The exceptions must be deemed to be true, and will be considered as stated without reference to the pleadings, exhibits and testimony, except as the latter is quoted in the bill.

FIRST EXCEPTION.

"Plaintiff's son, Harold Dixon Johnson, was called as a witness by plaintiff and was asked by plaintiff's counsel, among other things, the following questions, and gave the answers indicated:

Q. When you came to harvest your corn, did your father do anything about that?

A. No, sir.

Q. Had he, so far as you could judge, in observing him, tried to do all that he could in the way of work?

A. He has.

The last question was objected to by defendant as calling for witness's opinion or inference. The presiding justice, however, admitted same over the objection."

The exception must be overruled. The fact that the testimony expressed the witness' opinion or inference does not necessarily render it objectionable. *Snow* v. *B. & M. Railroad*, 65 Maine, 230. *Stacy* v. *Portland Pub. Co.*, 68 Maine, 279, 285. "The witness in effect describes the facts when he gives his opinion. It is his way of stating them. Such testimony is admitted from necessity. A witness can seldom give in detail all the points and particles which go to make up his belief, but he can characterize them. Practically the rule admitting such quasi opinion is convenient and safe." PETERS, J. in *Stacy* v. *Portland Pub. Co.*, supra. The practice of admitting quasi opinions from non-expert witnesses in such cases is in harmony with the rule which admits the best evidence. Doe, J. dissenting in *State* v. *Pike*, 49 N. H., 423. The test to be applied is thus stated by Professor Wigmore: "Such a witness' inferences are inadmissible when the jury can be put into a position of equal advantage for drawing them,—in other words, when by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion." 3 Wigmore on Ev., Sec.

1924, Page 2559.   The learned author adds:   "It is in the application of this test that the opinion rule really breaks down, as an aid in the investigation of truth.   In the vast majority of rulings of exclusion, the data observed by the witness could not, in any liberal and accurate view, be really reproduced by the witness' words and gestures.   The error of the judges consists in giving too much credit to the possibility of such reproduction."

In the instant case the son, in testifying, in effect said: "My father, so far as I could judge in observing him, had tried to do all that he could in the way of work."   He thus summarized in one sentence many facts, within his own knowledge, without specifying them.   Such a manner of expression is not objectionable.   *Stacy* v. *Portland Pub. Co.*, supra.   3 Chamberlayne on Ev. Sections 1850-1855.   *Hardy* v. *Merrill*, 56 N. H., 241.   In this state the tendency "has been to allow witnesses who are not experts a good deal of latitude in the expression of opinion, *short of declaring their judgments upon the point mainly and directly in issue. . . . . .* A witness under the direction of the court, may be permitted to describe peculiarities, conditions and situations, conduct and changes."   *Fayette* v. *Chesterville*, 77 Maine, 28, 34.   *Bridgham, Aplt.*, 82 Maine, 323, 326.

SECOND EXCEPTION.

Dr. Purington, a witness for plaintiff, was asked upon cross-examination:

"Was there anything broken so far as you could discover by examining his shoulder?"   He answered: "No, sir.   There was shadows that was discussed——."   The witness was here interrupted by the examining counsel, but was allowed by the presiding Justice to complete the interrupted sentence, which he did as follows: "relative to a crack below the spine of the scapula."   It appeared that the condition referred to had been observed on examination of an x-ray film, not taken by witness and not produced in court.   The counsel for defendant then moved that the portion of the answer relative to the crack be stricken out, and has exception to the refusal so to do.

The exception must be overruled.   The answer was entirely harmless, did not in the least qualify his direct denial, and was immaterial

because no claim of injury in that locality was made by plaintiff. We fail to see how the portion of answer objected to, if irresponsive, was in the least prejudicial.

The THIRD EXCEPTION is stated thus:

"Dr. William C. Peters was called as an expert surgeon to testify in behalf of plaintiff. He examined plaintiff at the request of the latter's attorneys to give an opinion relative to plaintiff's injuries, but he did not treat plaintiff. Dr. Peters was allowed to state: 'He (plaintiff) described his accident much as he has here,' and again: 'Now, Mr. Johnson's accident, as he described it to me, had been one in which he had been pitched on to his head and shoulders and his legs had been doubled up—'

Defendant objected to the admission of what plaintiff told Dr. Peters relative to the happening of the accident, on the ground that plaintiff's statement of such matters to Dr. Peters who was examining plaintiff with a view to testifying as an expert witness and not for the purpose of treatment was not admissible in evidence. But the court admitted the evidence subject to the objection."

Just what evidence was admitted does not clearly appear. The witness began a statement and was interrupted; he did not complete it, and so far as appears the incident was closed. No motion was made to have the language now regarded as objectionable stricken from the record.

Considering the exception as stated, we may assume that Dr. Peters' examination of the plaintiff was made at some time subsequent to the injury, and that whatever the plaintiff said to him was narrative of a past event. Such statements by the plaintiff were clearly inadmissible as evidence of the facts stated. *Asbury Ins. Co.* v. *Warren*, 66 Maine, 523. The cases cited by defendant fully sustain that proposition. It is very clear that Dr. Peters did not make the statements objected to for any such purpose. He examined the plaintiff that he might be in a position to give an opinion as to the plaintiff's injuries; it was very desirable, perhaps necessary, that he should obtain a history of the case; he obtained that from the plaintiff, and that history so obtained, he was stating to the jury when interrupted. If the history which he obtained coincided with the facts as proved by competent evidence, his opinion would be entitled to a certain degree of weight; if his opinion was based upon an erroneous history of the case, the basis of his opinion fails, and his opinion becomes of

less weight. The exception does not disclose an instance where the plaintiff is endeavoring to support his case by incompetent evidence of the substantive fact which he alleges, under the guise of fortifying the opinion of an expert. The testimony so far as given falls within the reasoning of *Barber* v. *Merriam,* 11 Allen, 322, 324, and *Cronin* v. *Street Ry.,* 181 Massachusetts, 202. In this state the reasons for an expert's opinion may be given upon his examination in chief. *Steam Mill Co.* v. *Water Power Co.,* 78 Maine, 274.

If counsel for defendant had considered his client aggrieved by this statement of Dr. Peters, he should have requested that its application be properly limited in the charge. We must assume that the jury was properly instructed as to the competency of the statements of the plaintiff to Dr. Peters. The defendant takes nothing by this exception.

FOURTH EXCEPTION.

The answer of Dr. Sanger to the question put on cross-examination, conceding as the plaintiff claims, that the subject of the inquiry was immaterial, was clearly harmless. It did not support any claim made by plaintiff.

*Motion and exceptions overruled.*