STATE OF MAINE *vs.* CHARLES K. DONNELL & ESTELLA EDWARDS.

Androscoggin.     Opinion February 6, 1930.

*Clement F. Robinson*, Attorney General,
*Fred H. Lancaster*, County Attorney, for State.
*Louis J. Brann*,
*Frank T. Powers*,
*John D. Clifford, Jr.*, for respondents.

SITTING: DEASY, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

DUNN, J. The record concerns two indictments.

In one, Charles K. Donnell and Estella Edwards are jointly principals. The indictment has three counts. The first count charges, in statutory form, the felonious homicide of Thelma Smith; the degree of the crime, manslaughter. The second count is for the attempt, by instrumentation, in the absence of necessity for preserving Thelma Smith's life, to accomplish the destruction of her unborn child. Such an offense is a misdemeanor. R. S., Chap. 126,

Sec. 9, as amended. The third count pleads manslaughter at common law. The respondents were tried together.

Against the respondent Donnell, the other, or second, indictment charges the commission of the same crimes as the first. In each of three counts, Estella Edwards, she whom the first indictment names as principal, and one Jessie Edwards, were accused as accessories after the fact. The government had leave to nolle, and nolled, the count charging them as accomplices to the unsuccessful abortion. Of the three respondents in this indictment, Estella Edwards was the only one put upon trial. She was tried on the two indictments at the same time.

On the first indictment, the verdict was the general one of guilty. On the second indictment, there was neither verdict nor report of inability to agree upon a verdict. The jury was discharged.

There was evidence to warrant a finding by the jury that the death of Thelma Smith had occurred on March 22, 1929; that the place of her death was Estella Edwards' house in Lewiston, where both respondents then were; and that the proximate cause of death was hemorrhage from instrumental wounding of her vagina and womb, and the emptying of her uterus at some stage of pregnancy.

Of the various exceptions, one makes the point that the introduction, against exception, on the redirect examination of a witness for the government, of mere hearsay, prejudicially affected the respondents.

Thelma Smith lived in Portland. Theodore M. Stevens had been her physician.

At the trial, Dr. Stevens witnessed that, on March 19, 1929, at Thelma Smith's home, his diagnosis of her condition was incomplete abortion; the foetus had not been passed. He advised hospital treatment. His advice was not followed. The witness, on cross-examination, testified, without objection, that his patient, in giving the history of her condition, stated its cause to have been an operation in Bangor, by a Bangor doctor.

Other witnesses gave testimony which afforded an inference that the operation had been performed by the respondent, Donnell. Donnell has a license to practice medicine.

One witness said, in evidence, that she had accompanied Thelma

Smith from Portland to Lewiston, and back, on March 15. In Lewiston, on the authority of the witness, the Smith woman, on leaving the automobile, walked towards Donnell's house. Within twenty minutes, she was in the motor-car again.

Another witness testified that, on March 20 (the day following the visit of Dr. Stevens) Thelma Smith and her husband were passengers in the taxicab of the witness to the near vicinity of the Donnell house.

Then the government recalled Dr. Stevens.

The county attorney inquired whether there had been "any further talk about any other (than hospital) arrangement." When the witness had replied, "She made the remark — " an objection interrupted him. The objection was overruled. The trial court ordered the witness to reply. "Go ahead and answer," spoke the county attorney. Said the witness, "She supposed if she went back to the man who performed the operation that he would take care of her." Neither respondent, so far as the record shows, was present.

Specific exception, taken both to this testimony and the question which had called for it, on the ground of hearsay, saved the point.

Rehearsal of further evidence is not essential.

Statements to his physician, of one's bodily ailments, made for the purpose of enabling the physician to give proper medical advice and treatment, by forming an opinion of the cause of such ailments, may be testified to by the physician; not as evidence of the actual cause of the ailments, but in connection with testimony of the opinion formed partly upon such statements. *Com.* v. *Sinclair*, 195 Mass., 100; *Com.* v. *Smith*, 213 Mass., 563. Mere narration, by a patient to his physician, of the cause of ailments, may not be told in evidence. *Ross' Case*, 124 Me., 107.

It was competent for Dr. Stevens, after testifying to the condition of his patient, and her complaints and symptoms, to give his opinion that these were such as might have been expected from incomplete abortion. Beyond this, what the patient may have said to the doctor was mere hearsay.

The law seeks the truth from first rather than second-hand evidence. Hearsay, pure hearsay, therefore, is inadmissible. This is the general rule.

The general rule has its exceptions. Dying declarations of a

person, tending to show the cause and manner of his death, not made in the presence and hearing of the person accused of his murder, though strictly hearsay, are, a proper foundation being laid, admissible in evidence as a substitute for sworn testimony. 10 Am. and Eng. Enc. Law, 373.

Declarations called out by the circumstances of a transaction, and related to some relevant act, constitute a verbal part of the act itself. *Deer Isle* v. *Winterport*, 87 Me., 37 ; *Holyoke* v. *Holyoke*, 110 Me., 469.

Where a conspiracy to do an unlawful act is shown, the declarations of a conspirator, since deceased, during, and in furtherance of, the criminal enterprise, have been held admissible against his coconspirators, though the declarations were not made in their hearing. 1 C. J., 325.

Unless the evidence objected to come within some exception to the general rule, it must rate as hearsay, and nothing else. It is not a dying declaration, nor a verbal act, nor shown to be a statement by a conspirator.

There is a rule of practice that, on the introduction without objection of incompetent evidence creating prejudicial and harmful inference against the other side, such other side may, within the discretion of the presiding judge, introduce evidence in direct and strict contradiction. *State* v. *Witham*, 72 Me., 531.

If mere hearsay, admitted without objection, has been injuriously prejudicial to the opposing party, he may meet the situation by legal evidence ; not by mere hearsay. To illustrate : the government could have introduced evidence, had it been available, that Thelma Smith did not make the statement about the operation ; or that she had not been in Bangor.

It was not permissible for the government to claim that, because a part of the hearsay story had been recited, the rest of the same conversation must be admitted. No more was the rest admissible than it would have been originally in chief. *Wagner* v. *People*, 30 Mich., 384 ; *Karnes* v. *State* (Nebr.), 196 N. W., 676 ; *McCracken* v. *West*, 17 Ohio, 16.

"It may be shown by the most irrefragable proof that the defendant is guilty of the offense charged against him ; but this does not justify the violation of well settled rules of evidence in order

to secure his conviction." *Schaser* v. *The State*, 36 Wis., 429.

The more important a fact to be proved is, the more important it is that it be proved by proper evidence. *Com.* v. *Felch*, 132 Mass., 22.

It is manifest, as to the respondent Donnell, that the hearsay was inadmissible; and it may have been injurious to his rights. *Sturgis* v. *Robbins*, 62 Me., 289.

In the case of the other respondent, prejudice is not, at first sight, so apparent. The evidence against the two is, however, interwoven. Double negatives seem appropriate to purpose; it is not to be said, trial of the respondents having been joint, that the hearsay may not have done this respondent prejudicial harm.

The exception is sustained.

The consequent is a new trial for both respondents.

It, then, is unnecessary to discuss the points which the other exceptions make. This applies only to the case the trial docket number of which is 1410.

In trial docket case No. 1413, it seems quite sufficient to say of the exceptions, that the respondent is not aggrieved. The exceptions are overruled.

The appeals are dismissed, but without the affirmance of judgment.

Let there be mandates accordingly.

*So ordered.*