ESTELLE V. FOTTER
*vs.*
HUGH M. BUTLER

Hancock.    Opinion, August 5, 1950.

*R. C. Masterman,* for plaintiff.

*W. B. Blaisdell,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.    The case is before us on issues of liability and excessive damages raised by defendant's general motion for a new trial after a jury verdict for plaintiff in an action arising from an automobile accident.    Damages were assessed at $10,000.

*Liability:*

A collision between a four-door Plymouth sedan driven by plaintiff's husband and a truck driven by defendant took

place at about 8:30 o'clock on the evening of March 27, 1948 on the main highway from Bar Harbor to Ellsworth as the vehicles approached from opposite directions to pass. The highway ran in a straight course approximately north and south for a substantial distance either way from the scene. It was what is often called a two-lane cement highway. The paved surface was twenty feet in width with a five-foot shoulder easterly of the cement and a four-foot shoulder westerly, and with a ditch on the outer edge of each shoulder. The sedan was proceeding northerly from Bar Harbor and the truck southerly from Ellsworth under conditions of fog and mist variously described by the witnesses.

It is apparent from the record that the decisive fact upon negligence was whether the collision took place on plaintiff's right-hand side, or the easterly side, of the center line of the highway. There could have been no reason for either driver in passing to encroach upon the traffic lane to his left-hand side of the center line.

In the sedan were plaintiff's husband, their eleven-year old son, Roland, beside his father, and in the rear the plaintiff holding their four-year-old daughter in her lap. The plaintiff's husband was killed in the accident. The plaintiff on her part could tell nothing of the circumstances of the collision.

Roland, the only eye witness for the plaintiff, testified in substance that, while his father was driving on his right-hand side of the road, the truck came "over the black line at us" and the sedan and truck collided.

Mr. Foster, a state police officer, reached the scene at nine o'clock. He observed that the sedan had not been moved and was then partly off the cement on the westerly side headed southerly. Of great importance he "found a lot of debris" from the collision including stakes and boards evidently from a truck "in the road in the easterly ditch," and "practically all of the debris was east of the center line."

The almost complete destruction of the left side of the sedan was sharply disclosed by a photograph. The jury could well have concluded that the damage was caused by an object striking the left front mudguard above the bumper and ripping through the entire length of the car.

The defendant was driving a Ford one and one-half ton truck of a common type with enclosed cab and a stake body with removable sideboards. Defendant's wife was beside him and on the right side the witness Murphy was seated holding the sister of defendant's wife in his lap. The defendant's story in substance follows: He was on his right side of the road "as snug to the (guard) rail as I could get." He saw the lights of the Fotter car "over on my side quite a bit." There was a slight bump. He opened the door to look, assumed the car had continued without harm, and without stopping drove several miles to his home.

The witness Murphy testified that he knew the truck was "well on his (defendant's) side of the road," and "I knew something had hit us but we didn't think it done any damage."

About midnight the state police officer talked with defendant at his home. Defendant at first denied and then admitted that he had been in a collision. We quote from defendant's testimony:

> "Q. When did you tell Mr. Foster first that you were up to Ellsworth that night?
>
> A. We went out back of the house and going out back he said, 'Where have you been?' And first I told him I hadn't been anywhere and then we went out and looked the truck over and after we looked I see the body had been moved back a little and he said, 'Are you sure you ain't been out of the house?' And I said, 'I have been to Ellsworth and on the way back someone hit the side of the truck.'"

The jury chose to accept plaintiff's version of the accident. That it did not believe the testimony of defendant

and witness Murphy involves only a question of credibility for the jury and not for us to decide. *Wyman* v. *Shibley,* 145 Me. 391, 72 A. (2nd) 450 (1950).

The jury placed the collision on defendant's wrong side of the highway; that is, on the easterly side of the center line. From such fact it could properly find negligence on the part of defendant. *Atherton* v. *Crandlemire et al.,* 140 Me. 28, 33 A. (2nd) 303 (1943) ; *Bragdon* v. *Kellogg,* 118 Me. 42, 105 A. 433, 6 A. L. R. 669 (1919).

> "The question of ordinary care, depending on answers to other questions, some of law and some of fact, is properly left to the jury with appropriate instructions."
>
> *Coombs* v. *Mackley,* 127 Me. 335 at 339, 143 A. 261 (1928).

On the issue of liability the case falls within the principle stated by the court in *Eaton* v. *Marcelle,* 139 Me. 256 at 257, 29 A. (2nd) 162 (1942) as follows:

> "The jury heard the evidence and determined the facts. It must have adopted as true Mr. Eaton's version. Where there is sufficient evidence upon which reasonable men may differ in their conclusions, the Court has no right to substitute its own judgment for that of the jury.—— To obtain a new trial the movant has the burden of proving that the jury's verdict is manifestly wrong."

The defendant in his argument presents for the first time in the case two issues: (1) that the jury manifestly erred in not finding plaintiff's husband was negligent, and (2) that his negligence is a bar to recovery by plaintiff under the principle that negligence of a driver is imputed to a passenger who is the owner of the automobile. See *Fuller* v. *Metcalf,* 125 Me. 77, 130 A. 875 (1925). No suggestion is made that plaintiff in her conduct was not in the exercise of due care or that negligence of a husband is a bar to a wife. The argument is limited to the case of the driver with passenger-owner.

The issue of negligence of plaintiff's husband not only was not raised at the trial, but was abandoned by defendant. The pertinent parts of the charge follow:

"Now I say to you the late husband of Mrs. Fotter was operating the car and if he were negligent in the operation of the car at the time and place of the accident, his negligence at that time and place and in connection with this case is not imputable to Mrs. Fotter who is the plaintiff in the present case.

So, as counsel have properly observed in connection with their arguments to you, the sole issue for you to decide by all the evidence that is presented in this case is bearing on the negligence of the defendant, and the burden of the plaintiff is to show that the defendant was negligent and that his negligence caused this accident. If she carries that burden by a fair preponderance of the evidence then she is entitled to recover.

I say to you that there is one other legal proposition and that is this—and it is alleged in the plaintiff's writ—that the plaintiff was then and there in due care. I do not understand that it is seriously contended that she was or could have been charged with want of due care at the time under the circumstances. However, it remains a proposition for you to decide and it is not for me to decide."

Surely there can be no better evidence that the issue of the husband's negligence was removed from the case with the approval of defendant than the clear-cut statement by the presiding justice that the only issue was defendant's negligence. It is too late for defendant to urge on general motion that there was an error of law in not submitting to the jury an issue abandoned by him.

The case is not within the principle stated in *Pierce* v. *Rodliffe,* 95 Me. 346 at 348, 50 A. 32 at 33 (1901) as follows:

"while the practice of raising questions of law upon a motion is not to be encouraged, in cases where manifest error in law has occurred, and injustice

would otherwise inevitably result, the law of the case may be examined upon a motion, and if required, the verdict be set aside as against law."

*Cox* v. *Metropolitan Life Insurance Company,* 139 Me. 167, 28 A. 2d 143 (1942).

In the *Cox* and *Pierce* cases decisive issues were submitted under erroneous instructions. Here at most the defendant complains of error upon an issue abandoned by him. The instruction did not relate to defendant's negligence, and could in no way have confused the jury in its consideration of the vital issue on liability. He cannot well urge the jury erred in not passing upon an issue not submitted to it.

Indeed, in the development of the case, it may well be said that the instruction was correct in that it was fairly intended by the court and was understood by both parties to cover the situation of the husband-driver and wife-passenger but not owner. In the declaration we find "the plaintiff's automobile was being driven" and "was demolished," and yet the claim for damages is limited to the personal injuries of the plaintiff. In the record and charge there is neither mention of ownership of the sedan nor claim for damages. The instruction given was not in terms within the principle of *Fuller* v. *Metcalf, supra,* and yet it applied exactly to the situation which the presiding justice could properly have believed to be presented for decision by the parties.

The defendant has shown no convincing reasons why the verdict should be set aside because against law, or against evidence, or against the weight of the evidence.

*Damages:*

Apart from cuts and bruises of a relatively minor nature, plaintiff suffered a very severe fracture of both bones of the left forearm. She was hospitalized from the night of the accident until May 8th. The attending surgeon told the

jury of the injury and treatment including an operation upon the arm for the purpose of placing "fragments in apposition." He also described the condition of the arm at the time of the trial as follows:

"A. The forearm now has a good contour but she has a healed operative scar. She has incomplete use of the elbow but it has nearly full range of motion. The fingers and hand she uses well but not completely. The forearm now rests not completely palm up but about seventy degrees, considering ninety degrees as normal. She has absolutely no ability to turn the hand palm down. The wrist has fair range of motion in flexion and extension and in ulna bending but in radial bending, which is the opposite direction of the wrist, it is useless."

Doubt was expressed by the doctor "if (the condition of the forearm and hand) will improve much beyond what it is now." When asked his opinion of the ratio of permanent impairment to the arm and hand, he testified: "That is a hard question to answer. I would say sixty to seventy-five percent." The plaintiff was about forty-one years of age at the time of the accident.

The plaintiff testified she was unable to work for a period of fifteen months, and then secured employment as a telephone operator at a wage of $135 a month. There was no evidence that plaintiff was employed at the time of the accident. Such fact, however, would not prevent recovery of damages for the loss of the time during incapacity.

That plaintiff suffered severe pain which to some extent continued at the time of the trial and which could reasonably be expected to continue in the future, and that she was subject to serious shock readily appears from the record.

The hospital and medical bills, no item of which was questioned by the defendant, amounted to $1,149.40. The attending surgeon indicated a second operation to remove a metal screw might become necessary without estimating the probable expense.

It is a difficult task to measure damages for personal injuries, and made, indeed, the more difficult when the loss must be projected beyond the trial into the future. There is no market value for pain and suffering or for permanent disability. The jury must, however, determine in dollars what sum will recompense the injured party for hospital and medical expense, pain and suffering, loss of time, and disabilities not only to the date of the trial but in the future. Wide differences of opinion are to be expected.

The test to be applied has been set forth recently in *Pearson* v. *Hanna*, 145 Me. 379, 70 A. (2nd) 247 (1950):

> "In actions of this nature there can be but one recovery. The jury's award of damages is in full for all injuries proximately caused by the accident, be they past, present or future.
>
> The assessment of damages is the sole province of the jury. Although we have the power to set aside verdicts because of excessive damages, it is not for this Court to substitute our judgment for the considered judgment of the jury. As said in Cayford v. Wilbur, 86 Me. 414, 416, 29 A. 1117, 1118 with respect to the amount of damages awarded by a jury: 'As a general rule, the parties are entitled to the judgment of the jury, and not of the court upon that question. There are cases, to be sure, where the court will intervene; but those cases will be governed by the evidence and circumstances of each particular case. The court will not, however, set verdicts aside on the ground that the damages are excessive or inadequate, unless it is apparent that the jury acted under some bias, prejudice, or improper influence, or have made some mistake of fact or law.' "

Although the verdict may seem large, it is to use the words of Chief Justice Savage in *Felker* v. *Bangor Railway & Electric Company*, 112 Me. 255 at 257, 91 A. 980 at 981 (1914) "within the bounds of reason." It does not appear that the jury acted under bias, prejudice, or improper influence or made a mistake of fact or law. There is no rea-

son for us, in applying the rule stated above, to say the damages recovered are excessive.

The entry will be:

*Motion overruled.*