Edward W. GOLDSTEIN and
Grace Goldstein

v.

Sara L. SKLAR, Ex'x Estate of Ben Sklar.

Supreme Judicial Court of Maine.

Jan. 18, 1966.

Edward Stern, Everett W. Gray, Arnold L. Veague, Bangor, for plaintiff.

Mitchell & Ballou, by John W. Ballou, Rudman & Rudman, by Paul L. Rudman, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and DUFRESNE, JJ.

DUFRESNE, Justice.

On appeal, in the case of the husband plaintiff, from the denial of defendant's motions for a directed verdict, for judgment n. o. v. and for new trial.

Defendant contends that the jury verdict and judgment thereon should be set aside and judgment entered for the defendant, on the ground that there is not sufficient evidence from which the jury could find that the plaintiff was in the exercise of due care at the time of the automobile accident wherein he sustained his injuries.

Should her request for judgment be denied, defendant further seeks a new trial for the usual reasons that the jury verdict is contrary to the evidence and the weight thereof, contrary to law, and against the law and the evidence, limiting however her attack on liability solely to the issue of plaintiff's contributory negligence.

The evidence sustains the following narration.

On August 25, 1961, at about 9:00 P.M., when dark, the plaintiff doctor and his wife passenger were traveling in a northerly direction on Broadway, in Bangor, Maine, while the defendant's testate, Ben Sklar, operating in a westerly direction on Garland Street, concededly drove his automobile

through the stop sign at the intersection of said public ways, and collided with the plaintiff's car.

As against the defendant's contention that there is not a scintilla of evidence to support the finding of plaintiff's due care necessarily included in the jury verdict, the record discloses that the plaintiff's car was damaged on the right front door and to the rear of the right side and the Sklar vehicle on the left front. The speed of both cars prior to the impact was described, without objection, as being normal, not excessive, and about the same. The plaintiff's automobile, so two persons parked some 30 feet away from the intersection stated, was being operated on its own right hand side of Broadway, but was pushed somewhat over the center line thereof by the impact from the Sklar vehicle, which did not stop for the stop sign. The intersection was illuminated by street light; both vehicles had their head lights on and although one could see some 30 to 40 feet into Garland Street when proceeding northerly on Broadway, vision was cut down somewhat by reason of trees and a rise in the terrain.

■ With the evidence in that position because of the statutory testimonial inhibition of the "dead man" statute so-called, R.S.1954, c. 113, § 119, now M.R.S.A. T. 16 § 1, (Sklar had deceased on April 2, 1963), was there a failure of proof of plaintiff's due care as a matter of law?

The physical and evidentiary facts tend to indicate that the plaintiff's automobile, of the two vehicles converging upon the intersection, entered it first and thus confirm objectively the plaintiff's right of way in fact as well as in law. There is no evidence of positive acts condemning the plaintiff's operation as negligence as a matter of law.

But should there be positive evidence as to what the plaintiff operator was doing and where he was looking at the time of the accident, failing which this Court should rule as a matter of law that the plaintiff

has not carried his burden of proof as to his own due care? We think not.

This case is analogous to Tinker v. Trevett, 155 Me. 426, 156 A.2d 233, except for the fact that in Tinker, the plaintiff did testify that, when about a car length away, she glanced in both directions, observed nothing and continued into the intersection, seeing the defendant for the first time just before the collision, which caused this Court to say that it was plain the defendant was in plaintiff's sight when the plaintiff's sedan was more than a car length north of the intersection and the plaintiff's vision was not obscured to the extent suggested by her.

In this case, we do not have, as in Tinker, any such evidence suggesting that a proper observation by the plaintiff under the circumstances might have brought timely notice to him that the Sklar vehicle would not obey the stop sign law so that the accident could have been avoided. It was nighttime, and visibility into Garland Street from plaintiff's position was no more than 40 feet, with obstructions that could have reduced the extent of such visibility.

As stated by this Court in Crockett v. Staples, 148 Me. 55, at 59, 89 A.2d 737, at 739:

"The plaintiff was not bound to anticipate defendant's negligence. He had a right to consider that the defendant would observe the law as to stopping." Hutchins v. Mosher, 146 Me. 409, 82 A.2d 411; Davis v. Simpson, 138 Me. 137, at 145, 23 A.2d 320.

■ The plaintiff's right to assume that Sklar would observe the law and refrain from negligently operating his automobile through the stop sign, would legally persist *until the contrary appeared*. Davis v. Simpson, supra. See also, Sanborn v. Stone, 149 Me. 429 at 434, 103 A.2d 101.

When should the plaintiff Goldstein as an ordinary reasonable person in the exercise of due care have had knowledge that

the Sklar vehicle in all probability would not observe the law, would negligently go through the stop sign without stopping and fail to yield the statutory right of way? From the evidence as it stands in the record, we cannot say as a matter of law that such knowledge should have come to the plaintiff before he was committed to entering the intersection and at a time when it was not too late to avoid the collision.

> "It is not necessary to show a positive act of care if it appears that there is absence of fault." Torrey v. Congress Square Hotel Co., 145 Me. 234, at page 244, 75 A.2d 451, at page 458.

Our Court in Guthrie v. Me. Central R. R. Co., 81 Me. 572, at page 580, 18 A. 295, at page 296, well described the situation that confronts us here:

> "The second question raised is whether the plaintiff is shown to have been in the exercise of due care at the time of the accident. The degree of care required is not in dispute, nor is it denied that it is a question for the jury. But it is denied that the plaintiff has affirmatively discharged the burden resting upon him of showing that he was not guilty of negligence which contributed to the accident. This, at best, is a negative kind of proof. It is not necessary, nor is it ordinarily expected, that any positive act of care shall be proved. If there is any fault, that is usually susceptible of proof. But the absence of fault, with evidence of circumstances which naturally exclude it, is sufficient."

The evidence discloses factual circumstances which naturally tend to exclude negligence on the part of the plaintiff as a proximate contributing cause of the accident; they have some probative force indicating that the plaintiff could not have avoided the collision by the exercise of due care.

This case is not controlled by McLane v. Perkins, 92 Me. 39, 42 A. 255, 43 L.R.A. 487 where the cause of death of the plaintiff's intestate was completely left unexplained and conjectural in the evidence.

■ To carry a case to the jury, the evidence on the part of the plaintiff must be such as, if believed, *would authorize* them *to find that the accident was occasioned* solely by the negligence of the defendant. Witherly v. Bangor & Aroostook Ry., 131 Me. 4, at page 7, 158 A. 362; Spang v. Cote et al., 144 Me. 338, at page 343, 68 A.2d 823; Burtchell v. Willey, Sr., 147 Me. 339, at page 344, 87 A.2d 658.

As stated in *Torrey,* supra,

> "there is evidence enough in this record to warrant a finding by the jury as to whether or not the plaintiff exercised legal care."

The defendant's motion for a directed verdict, for judgment n. o. v. and for new trial based on the insufficiency of the evidence was properly denied by the presiding justice below.

Defendant's motion for new trial is also grounded on the alleged reversible error occurring when the Court below, over objection, permitted plaintiff's medical witness to relate to the jury the history given to him by the plaintiff on original examination for purposes of treatment.

The offending testimony may be divided into 3 parts:

(1) "he stated to me that as a result of the impact he was thrown to the left, he was in the driver's seat;" this part of the statement, it must be conceded, is a narration of events concerning the occurrence of the accident.

(2) "that his head snapped at the impact. He noted immediate soreness involving the left side of the neck, the left shoulder, and the left side of the body. He complained further that within 24 hours after this injury, he noted numbness on the outer aspect of the hand and forearm. * * * He also complained of pain in the left shoulder

shortly after the injury. He then gave me further history as to what took place from that time until the time I saw him;" this portion of the reference history, as maintained by defendant's counsel, describes the plaintiff's past physical disturbance, pain and suffering.

(3) "Doctor Goldstein told me that he was receiving diathermy treatment to the neck, traction treatments to the neck, and injections of vitamin B–12;" this last quoted testimonial averment, as defendant's counsel contends, indicated past medical treatment by another physician.

The record shows that defendant was not objecting to any history which the plaintiff might have given to the doctor as to his pain and suffering or subjective complaints at the time of examination, but only to the recital of past events, past complaints, past pain and suffering, past medical treatment.

Let us bear in mind, however, the constrictive delimitations within which this evidence was received as it did not go to the jury for all purposes nor was it allowed as substantive, independent and original evidence of the facts stated in the related history.

After the doctor had testified that a patient's case history is customarily taken for proper diagnosis and treatment and that a history of past treatment by the other doctor helped in determining the course of the illness and its prognosis, the Court instructed the jury to the effect that they may hear this type of evidence and consider it, not however to prove the fact that the plaintiff was in an automobile or that there was an accident, or that the plaintiff was in fact treated by another doctor or that the plaintiff was undergoing pain and discomfort during that time, but that they may give it consideration only as bearing on the diagnosis and opinion of the doctor as to the nature of the plaintiff's injury, and the part that such knowledge and information played in the doctor's evaluation of the patient's condition at the time and his judgment as to future treatment.

In other words, the judicial instructions were, and must have been understood by the jury to mean, that such evidence could not be used as proof of the facts stated, but could only be considered in explanation and support of the diagnosis, treatment, prognosis and opinion of the medical witness and in evaluation of the weight to be given the same, to the extent that it had such probative tendency.

The jury must be presumed to have performed its duties correctly and followed the instructions of the court in reaching its verdict. Sedillo v. City of Portland, 234 Or. 28, 380 P.2d 115; Maffeo v. Holmes, 47 Cal. App.2d 292, 117 P.2d 948; Kelekian v. Feinberg, Sup., 118 N.Y.S.2d 641. See also, 31A C.J.S. Evidence § 145 note 53.5.

Notwithstanding the specific instructions of the court narrowing the evidentiary value of all this evidence, the defendant still claims that it was hearsay and inadmissible.

Although this evidence did consist of statements made by the plaintiff to the doctor out of court, and in popular parlance, may be termed hearsay, we do notice that it does not come within the definition of such evidence as espoused by McCormick in his treatise on evidence.

At page 460:

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."

The objection thereto must be ruled upon, no matter what this type of evidence may be legally called.

Our Court first ruled in Heald v. Thing, 45 Me. 392, that a consulting physician could not testify to statements made to him by the attending physician concerning the symptoms of the patient's disease. From all appearances, that case did not have to do with statements of the patient

and thus lies outside the scope of our inquiry.

In Asbury Life Insurance Company v. Warren, 66 Me. 523, a case where the statements of a decedent were made to persons other than a physician, we find the following dictum at page 529:

"There is undoubtedly a distinction to be made between declarations made to an attending physician, and such as may have been made to others; much more liberality is to be allowed in the former case than in the latter. This is allowed on the ground of their necessity, to enable the physician to form an opinion as to the true condition of the patient, as well as because the professional man is less liable to be deceived than others. *But even in such case it is rather to show the reasons and foundation of the medical opinion, than as substantive proof of the facts stated.* Barber et ux. v. Merriam, 11 Allen, 322." (Emphasis supplied.)

In Ross' Case, 124 Me. 107, 126 A. 484, a workmen's compensation case, declarations of the decedent to the medical men ascribing the origin or cause of his disability to his daily work were said to have been admitted erroneously. In Ross, the statements themselves do not appear directly but from the employer's report, confirmed by its treasurer, as the case discloses, it may be assumed that the decedent's statements to the doctors were in similar tenor to the effect that he had received a slight cut on the 3rd finger of the left hand while working in the finishing room. Such recital, it must be noted, contained not only *how* the accident happened but also *where* it occurred, and thus would have served to prove causative connection between the employment and the injury. Our Court said, at page 109, 126 A. at page 485:

"recital of the cause that produced the injury is of a past event whereof self-interest may have warped both memory and judgment, it is uncontemporaneous with a present situation, and therefrom does not derive a claim to confidence and credit."

In Johnson v. Bangor Railway and Electric Company, 125 Me. 88, 131 A. 1, plaintiff's expert medical witness had not treated the plaintiff, but had examined him only for the purpose of testifying as an expert. The statements related by the doctor and which were objected to, consisted of the following:

"Now, Mr. Johnson's accident, as he described it to me, had been one in which he had been pitched on to his head and shoulders and his legs had been doubled up."

Our Court there said:

"Such statements by the plaintiff were clearly inadmissible as evidence of the facts stated."

Then the Court expounded the theory under which said evidence was admissible, at page 94, 131 A. at page 4:

"He (the doctor) examined the plaintiff that he might be in a position to give an opinion as to the plaintiff's injuries. It was very desirable, perhaps necessary, that he should obtain a history of the case; he obtained that from the plaintiff, and that history so obtained, he was stating to the jury when interrupted. If the history which he obtained coincided with the facts as proved by competent evidence, his opinion would be entitled to a certain degree of weight; if his opinion was based upon an erroneous history of the case, the basis of his opinion fails, and his opinion becomes of less weight."

The Court, in Johnson, then assumed that the jury was properly instructed as to the competency of such evidence by the presiding justice, to wit, to the effect that such statements are not evidence of the facts stated, and thus ruled there was no error.

The Court in Johnson, further pointed out that this was not

"an instance where the plaintiff is endeavoring to support his case by incompetent evidence of the substantive fact which he alleges, under the guise of fortifying the opinion of an expert."

In Johnson, the case history given by the plaintiff to the physician who examined him solely for the purpose of qualifying to give his expert opinion as to plaintiff's injuries, related to the manner in which the accident happened, and even though the Court itself states that "just what evidence was admitted does not clearly appear", the result therein must be viewed as some limitation on the holding in Ross' case.

In State v. Donnell et al., 128 Me. 500, at page 503, 148 A. 747, at page 749, our Court said:

"Statements to his physician, of one's bodily ailments, made for the purpose of enabling the physician to give proper medical advice and treatment, by forming an opinion of the cause of such ailments, may be testified to by the physician; not as evidence of the actual cause of the ailments, but in connection with testimony of the opinion formed partly upon such statements. * * * Mere narration, by a patient to his physician, of the cause of ailments, may not be told in evidence. Ross' Case, 124 Me. 107, 126 A. 484."

In Donnell, the statement which compelled a new trial was that

"she supposed if she went back to the man who performed the operation that he would take care of her."

Such a statement was entirely foreign to the nature of the cause of the ailment, and tended only to pinpoint responsibility for an abortion upon a described person. Its reference to the person helped in no way the treating physician's diagnosis or opinion. The evidence, from this viewpoint alone, was clearly prejudicial hearsay and inadmissible.

The authorities are collected in 31A C.J. S. Evidence §§ 241 and 246b; 20 Am.Jur. Evidence, §§ 625–630 and § 866; annotations in 67 A.L.R., page 10, 130 A.L.R., page 977; Wigmore on Evidence, 3rd Ed., Vol. VI, § 1722(c); McCormick on Evidence, c. 30 §§ 265, 266, 267.

There is much conflict on the subject. The apparent weight of authority however seems to uphold the rule that statements made to a physician by a patient, as to the cause and manner of the happening of an injury, which statements cannot qualify as part of the res gestae, are not admissible in evidence. See cases such as: Roosa v. Boston Loan Company, 132 Mass. 439; Ginsberg v. Burroughs Adding Machine Co., 204 Mich. 130, 170 N.W. 15; Peterson v. Richfield Plaza, Inc., 252 Minn. 215, 89 N. W.2d 712; Andricsak v. National Fireproofing Corporation, 3 N.J. 466, 70 A.2d 750; Reid v. Yellow Cab Co., 131 Or. 27, 279 P. 635, 67 A.L.R. 1. But see, Wise v. State Industrial Accident Commission, 148 Or. 461, 35 P.2d 242.

But the current trend of the authorities seems to recognize that such part of the history of the case given by the patient to the doctor as describes the general character of the cause or the general manner of happening of the injury when relevant to his diagnosis, treatment, or medical opinion, may be admitted into evidence, if not as evidence of the facts stated, then at least in support or explanation of the medical conclusions.

Omberg v. United States Mut. Ass'n, 101 Ky. 303, 40 S.W. 909, 72 Am.St.Rep. 413 (history of mosquito bite); Valentine et al. v. Weaver, 191 Ky. 37, 228 S.W. 1036 (history of the *how* and the *when*, but not the *where*, of the accident); Peterson v. Industrial Commission of Utah, 83 Utah 94, 27 P.2d 31 (history of feeling pain when lifting boiler); (Kellogg et al. v. Industrial Commission of Ohio, 60 Ohio App. 22, 19 N.E. 2d 511 (history of external blow); Boyle v. Philadelphia Rapid Transit Co., 286 Pa. 536, 134 A. 446 (history of blow); Hillman

et al. v. Utah Power & Light Co. et al., 56 Idaho 67, 51 P.2d 703.

■ As we have seen, our Court in Ross' case aligned itself with the exclusionary rule jurisdictions. But Ross' case involved a history of the place of the accident, to wit, the employer's finishing room, and such was not relevant or necessary for proper medical diagnosis, treatment or opinion, and therefor the history was inadmissible on that ground. In our present case, the history of plaintiff being thrown to the left as a result of the impact or automobile accident was relevant material evidence for consideration of the doctor for purposes of intelligent diagnosis and treatment and in support or explanation of his ultimate medical expert opinion. It did not have, as in Ross' case, the fatal feature of tending to prove responsibility for the injury.

It was factually similar on this portion of the case history to that in Johnson, supra, where our Court held it admissible in aid to the examining physician's opinion.

The presiding justice instructed the jury that this type of evidence as contained in the history of the case given by the plaintiff to the doctor could not be considered as evidence of the facts stated, but only as it might support or explain the doctor's diagnosis and opinion of the nature of the injury. This was not error. See also, Wise v. State Industrial Accident Commission, 148 Or. 461, 35 P.2d 242, previously cited.

The history given by the plaintiff to the doctor, objected to by the defendant, recited plaintiff's past condition, symptoms, sensations and feelings.

" * * * his head snapped at the impact. He noted immediate soreness involving the left side of the neck, the left shoulder, and the left side of the body. He complained further that within 24 hours after this injury, he noted numbness on the outer aspect of the hand and forearm, which we call the ulna area of the hand and forearm named

after the nerve that supplies that area of the hand and arm.

He also complained of pain in the left shoulder shortly after the injury. He then gave me further history as to what took place from that time until the time I saw him."

This evidence was received subject to the court's limitative instruction as previously indicated, that the jury was not to consider the same as evidence of the facts stated, but only in its bearing on the doctor's diagnosis and opinion.

Dr. Chodosh was consulted by the plaintiff for purposes of treatment. As testified to by him, the examining physician customarily takes a case history from his patient as to what happened, because the history of complaints goes a long way in determining diagnosis.

■ It is common knowledge that examining physicians inquire into the history of the development of the sickness or the event of the injury, its duration, its symptoms, whether the patient suffers pain, what remedies or treatment have been employed, and every other circumstance which the patient can reveal which may aid in the recognition of the real nature of the disease or injury to be treated.

All these declarations made by the patient to the examining physician as to his present or past symptoms are known by the patient who is seeking medical assistance to be required for proper diagnosis and treatment and by reason thereof, are viewed as highly reliable and apt to state true facts.

These statements of past bodily condition and past pain and suffering made by the plaintiff to the attending physician for the purpose of securing diagnosis and treatment, were admitted through the medical witness, not to establish the truth of the facts stated, but to show the basis upon which he had formed his professional opinion as to the nature and extent of the plaintiff's injury. In this, there was no error.

Lowery v. Jones, 219 Ala. 201, 121 So. 704, 64 A.L.R. 553; Wise v. Monteros, 93 Ariz. 124, 379 P.2d 116; Davis v. Renton, 113 Cal.App. 561, 298 P. 834; Mutual Life Ins. Co. of New York v. Davis, 48 Ga.App. 742, 173 S.E. 471; Carnegie-Illinois Steel Corp. v. Andino, 121 Ind.App. 37, 94 N.E.2d 498; Chicago, R. I. & P. Ry. Co. v. Jackson, 63 Okl. 32, 162 P. 823; Texas Emp. Ins. Ass'n v. Wilkerson, (Tex.Civ.App.) 199 S.W.2d 288; Atlantic Ins. Co. v. Boyette (Tex. Civ.App.), 342 S.W.2d 379; Kraettli v. North Coast Transp. Co., 166 Wash. 186, 6 P.2d 609, 80 A.L.R. 1520.

Defendant also objected to the case history, because it contained a recital of the past treatment of the plaintiff by a previous treating physician.

"Doctor Goldstein told me that he was receiving diathermy treatment to the neck, traction treatments to the neck and injections of vitamin B–12."

We do recognize that previous treatment of an injury or illness may be material in diagnosing a physical condition and in determining the proper treatment thereafter. We further appreciate that the plaintiff could have testified to the same, if the defendant's testate were living.

■ Where this evidence, although relevant and beneficial, is perhaps not absolutely necessary to the attending physician's approach to his diagnosis and treatment, we would not sanction under the guise of case history, even to the limited extent allowed in this case, a lengthy recital of past treatment with all the minute details thereof. Such evidence must be kept within reasonable legal orbit under the discretion of the presiding justice, so that the jury will not get the impression that the history of past treatment is substantive evidence in the case.

There was no abuse of discretion in admitting this short history of past treatment under the restrictive instruction of the court below. No prejudicial error appears.

The defendant additionally questions the admissibility of the plaintiff's case history as received from the physician witness, because such evidence, as she says, could not be given directly by the plaintiff who was incompetent to testify to any fact happening before the death of defendant's testate. M.R.S.A. T. 16 § 1(2).

■ The common law disqualification by reason of interest survives by the grace of the dead man's statute, only against parties to the action, including their respective spouses, and only in relation to testimonial facts happening before the death of the deceased.

As very well said in Wilson v. Wilson, 157 Me. 119, 123, 170 A.2d 679, 682 and Tobey, Jr., et al. v. Quick, 149 Me. 306, 309, 101 A.2d 187, "the reason for the rule is that in those cases where death has closed the mouth of one party, the law seeks to make an equality by closing the mouth of the other", but the mouth of the living party is closed only as that living party attempts to be heard as a witness on the stand and not otherwise, and it is only his testimony that is excluded and not statements of the living party testified to by others, provided said statements be relevant and otherwise admissible under the rules of evidence.

In Tobey, supra, our Court ruled erroneous the exclusion of statements of the plaintiff party in conversations with the deceased offered through non-party witnesses.

■ Our Legislature has liberalized the strict rules of the common law and persons may now testify in actions in which they have an interest, and all the facts relevant to an issue may now be received and considered in the trial thereof. The dead man's statute remains however as a restriction upon full operation of this more recent liberal legislative policy. This statutory disqualification as does remain must be kept within the range of its statutory terminology and is not to be extended by construction. Fox v. Fox, 75 Wyo. 390, 296 P.2d 252, 256; Treiber v. McCormack, 90 Kan. 675, 136 P.

268, Ann.Cas.1915B, 943. See also Rosen et al. v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406; 58 Am.Jur. Witnesses § 106; 97 C.J.S. Witnesses § 145.

 The plaintiff's statutory incompetency did not disqualify the case history portion of Dr. Chodosh's testimony. See also 20 Am.Jur. Evidence § 626.

Finally, the defendant claims entitlement to a new trial, because, she contends, the jury award is excessive, and there is not sufficient or substantial evidence to support the amount thereof.

From the jury verdict of $32,500.00, we may initially subtract the uncontroverted amounts of $70.00 paid to Dr. Chodosh, for his services to the plaintiff, and $1,054.18, the damage to plaintiff's automobile. Therefore, in order to overcome the defendant's attack upon the verdict for excessiveness, we must find from the evidence legal support for damages in the amount of $31,375.82 as compensation for the personal injury sustained by the plaintiff, Dr. Goldstein, as a result of the accident.

The evidence discloses that the accident happened on August 25, 1961, at least 3 years before trial, and that prior thereto, the plaintiff doctor, who was observed frequently in the practice of his profession at the hospital, was not known to be suffering from any physical difficulty, but that complaints of discomfort appeared subsequently thereto.

Attended by another physician whose testimony was not available to the jury, the plaintiff was first treated by Dr. Chodosh on June 15, 1962. At that time, nearly a year after the accident, the doctor found tenderness in the muscles of the neck and evidence of nerve involvement in the nature of diminished sensation in the outer aspect of the hand and that the plaintiff doctor was suffering with bilateral cervical radiculitis, a disease involving the nerve root

as it comes out of the spinal cord. Very little change was noted in the examinations of September 17, 1962, May 28, 1963 and May 4, 1964. The loss of sensation has continued in the 3rd, 4th and 5th fingers of the left hand. Complaints of pain were directed to the neck and shoulders, to both hands and arms. Shrinkage of the muscles had left the left hand flattened and the grasp thereof weaker with diminished sensation therein. The plaintiff's condition was described as permanent.

Dr. Chodosh testified on cross examination that from his observation, Dr. Goldstein's principal difficulty seems to be pain as he uses the arm, and the minimal weakness of the hand which interferes with his functional use of the hand, and that no other treatment, surgical or medical, would bring about any better results than those then obtained.

Defendant's medical witness, Dr. Woodcock, in late 1963, received similar complaints of pain in the neck, with numbness radiating to the left upper extremity involving the middle, ring and little finger of the left hand, and pain on lifting. He did confirm sensory diminution and that no further orthopedic help could be given.

Dr. Goldstein testified to continuous pain and limitations in the practice of his profession as a gastroenterologist because of his radiculitis. He had to stop and rest, so he said, and had to exert extra force to hold onto the equipment used in the taking of fluoroscope pictures of patients and in manipulating patients into proper position. The pain also interrupted his sleep. Analgesic tablets and vitamin B–12 injections for relief of pain were stated to be ineffective. He described his pain as radiating down from the neck through the shoulder, the forearms and into the left hand, and the numbness in his left hand as a sensation of tingling depriving him of the sense of touch to the extent that he does not appreciate the volume and substance of various objects he must handle. He

complained of weakness in the hand which caused him to drop equipment on numerous occasions.

In connection with the interference which his physical condition caused in the practice of his profession, he stated that he felt that he had lost approximately 25% of his working time. He estimated that 60% to 75% of his income was dependent on the operation of his X-ray machine and that his accident-caused physical difficulty, interfered with the necessary labor incidental in its use. He specified that he had to take 2 or 3 days off at a time, sometimes 4 days, that he cut down on his work by refusing patients or referring them to others. He was permitted to testify without objection in direct and to restate on cross-examination, that he felt that he lost at the rate of $5,000.00 to $7,000.00 per year as an estimate, admitting that nobody could give an accurate figure. He did submit to the jury gross and net income figures for the year 1963, but none for any year prior to the accident. He admitted that the dollar level of income after April 2, 1963 was about the same as before the accident, but explained his loss of income claim on the basis that, if he were able to work as many hours as he had done before, the dollar level would be appreciably higher, to wit, $5,000.00 to $7,000.00 per year higher. This was the picture presented by the evidence; no objections were raised nor more specificity tendered.

The plaintiff was entitled to an award by the jury that would fairly, reasonably and adequately compensate him for his pain and suffering, past and future, mental and physical, as well as for his loss of health and loss due to diminished earning capacity, past and future, proximately ascribable to his injury.

In Holmes v. Halde, 74 Me. 28, at page 39, our Court has said:

"If, by the injuries received, the plaintiff (a practicing physician) was deprived of his capacity to perform his ordinary labor, or attend to his ordinary business, the loss he sustained thereby is an element of damages. The true test is what his services might be worth to him in his ordinary employment or business. * * * What he had previously been receiving for his services in his business, is proper evidence on this point * * * he was receiving an income of a certain amount for his services, that was the measure of the value of his capacity to render them, and might be fairly considered as evidence tending to show that he would receive similar compensation in the future."

Thus, for loss of capacity to attend his professional business as a physician, the Court there said that the plaintiff could recover the value of such services to him, and that the income received for such services before the accident was admissible evidence to be considered in establishing the worth of the medical services which because of his injury, he was incapable of rendering thereafter, on the theory that such evidence tends to show that similar compensation would be received after the accident as before it.

Professional people, like the plaintiff doctor, may recover, in a personal action, damages for partial loss or diminution of earning capacity, temporary or permanent, past and future, and as in proof of damages for pain and suffering, there may be difficulty in measuring the loss. See 22 Am.Jur. Damages, § 99; 25 C.J.S. Damages § 87; 10 Blashfield, Cyc. of Automobile Law and Practice, § 6465.

In Fotter v. Butler, 145 Me. 266, 75 A.2d 160, this Court recognized the difficulty in measuring damages for personal injuries, and especially when the loss must be projected beyond the trial into the future. But equal recognition was therein given to the duty of the jury to determine in dollars

what sum will compensate for disabilities extending in the future.

In Fotter, there was permanent impairment to the arm and hand to the extent of sixty to seventy percent. The plainiff testified that fifteen months after the accident she had secured employment as a telephone operator at a wage of $135.00 a month, but there was no evidence that the plaintiff was employed at the time of the accident. Our Court there said that such fact—no evidence of employment at time of accident—would not prevent recovery of damages for the loss of time during incapacity.

The defendant does not dispute the plaintiff's right to recover damages for pain and suffering, and for loss of earning capacity, past and future. But she asserts, notwithstanding Fotter, supra, that where there was no evidence of the plaintiff's income or earning ability before or at the time of the accident, the jury could not have reached their verdict except by speculation, surmise and conjecture, in so far as damages for loss of earning capacity was concerned, and that to that extent the jury award is illegally inflated.

Such is not the case. The jury had, besides the gross and net income for the year 1963, the plaintiff's various estimates of the effect of his injury upon his income or earning capacity, to wit: loss of 25% of his working time; loss of 2, 3 or 4 days at a time per week, loss of $5,000.00 to $7,000.00 per year, all evidence in the case without objection.

Furthermore, the plaintiff's complete life story, together with his personal appearance on the stand, were part of the whole picture from which the jury could be expected to exercise their sound common sense in evaluating the probabilities of the surrounding circumstances. They had a right to consider, as the testimony indicated, the plaintiff's age, his past experience in the practice of his specialty, his health, habits of industry, his expectancy of life, his status at the time of trial, the physical layout of

his establishment. The jury could further find that the plaintiff's business was dependent upon his personal efforts and that it practically stopped when he did, and that his estimates of loss were not pure fiction or fantasy but were factually grounded.

Direct and specific evidence of the extent of the impairment, measured in money, is not necessary; it is not essential to recovery of damages for permanent disability that there be in the evidence for purposes of comparison proof of income before and after the accident in support of diminution of earning power. Fotter v. Butler, supra. Cross v. Sharaffa, 281 Mass. 329, 183 N.E. 838. See also: Storrs v. Los Angeles Traction Co., 134 Cal. 93, 66 P. 72; Evarts v. Santa Barbara Consolidated Ry. Co., 3 Cal.App. 712, 86 P. 830; Washington v. Pacific Electric Ry. Co., 14 Cal.App. 685, 112 P. 904; Florence & C. C. R. Co. v. Kerr, 59 Colo. 539, 151 P. 439.

Proof by approximations was allowed in: Llewellyn v. City of Wilkes-Barre, 254 Pa. 196, 98 A. 886; New Jersey Express Co. v. Nichols, 33 N.J.L. 434; Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S.W. 648, 5 L.R.A.,N.S., 186; but see: Whipple v. Rich, 180 Mass. 477, 63 N.E. 5; Gregory v. Slaughter, 124 Ky. 345, 99 S.W. 247, 8 L.R.A.,N.S., 1228.

The assessment of damages for impairment of earning capacity rests largely upon the common knowledge of the jury or other fact-finder, sometimes with little aid from evidence; helpful evidence is admissible, although it does not furnish any mathematical valuation of the impairment. Doherty v. Ruiz, 302 Mass. 145, 18 N.E.2d 542, 543; Shaw v. Pacific Supply Co-Operative et al., 166 Or. 508, 113 P.2d 627.

The members of the jury were at liberty to consider the evidence of all facts and circumstances in the light of their knowledge and experience. Damages cannot always be reduced to mathematical computation. Kennebec Towage Company v.

State of Maine, 142 Me. 327, 332, 52 A.2d 166.

"In the end the question must be left to the sound sense and good judgment of the jury, to award such damages as seem to them to be fairly compensatory." Davis v. Tobin, 131 Me. 426, 434, 163 A. 780, 783; Felker v. Bangor Railway and Electric Company, 112 Me. 255, 91 A. 980.

 What exact portion of the verdict may have been returned for pain and suffering, and what part for loss of earning capacity, it is impossible to state with any degree of accuracy. The injuries have been accepted by the jury as serious. It must be assumed that they agreed to an actual life expectancy for the plaintiff of 26 years from the date of the injury. Continuous pain for that length of time would command a substantial exchange in money values. A jury allowance to the plaintiff practicing physician of seemingly less than $1,000.00 per year for loss of earning capacity resulting from proven permanent injury to his hand and other physical deficiency, does not, by any stretch of the imagination, brand the award as the product of prejudice, bias or mistake of law or fact, nor does a careful study of the record in any wise so indicate.

Although the verdict may seem large, it reflects the considered opinion of the jury within the range of evidence of sufficient probative character, and where it does not appear that bias, prejudice or improper influence or any mistake of fact or law had any part therein, no reason exists to deprive the plaintiff of the full extent of his verdict. Fotter v. Butler, supra. McMann v. Reliable Furniture Co., 153 Me. 383, 140 A.2d 736.

There was no error in denying the defendant's motion for new trial.

The entry will be

Appeal denied.

RUDMAN, J., did not sit.